No. 20-61019

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

CHARLES RAY CRAWFORD, *Petitioner-Appellant*

*v.*

BURL CAIN, COMMISSIONER, MISSISSIPPI DEPARTMENT OF
CORRECTIONS; EARNEST LEE, SUPERINTENDENT, MISSISSIPPI STATE
PENITENTIARY, *Respondents-Appellees*

_____

Appeal from the United States District Court
For the Northern District of Mississippi
USDC No. 3:17cv105-SA-DAS

_____

**APPELLANT CHARLES CRAWFORD'S PETITION
FOR REHEARING EN BANC**

_____

Vanessa J. Carroll
Southern Center for Human Rights
60 Walton Street NW
Atlanta, GA 30303
(608) 354-7149
vcarroll@schr.org

*Counsel for Petitioner-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

*Charles Ray Crawford v. Burl Cain, et al.*, No. 20-61019

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal.

1.    Bell, David, Former Appellate Counsel

2.    Carroll, Vanessa, Counsel for Petitioner-Appellant

3.    Coleman, R. Kenneth, Trial Judge

4.    Crawford, Charles Ray, Petitioner-Appellant

5.    Davis, Jason, L., Former Counsel for Respondent-Appellee

6.    Fortier, William R., Trial Counsel

7.    Grant, Bridgette, Counsel for Respondent-Appellee

8.    Holmes, George T., Former Counsel for Respondent-Appellee

9.    Levidiotis, Thomas C., Former Appellate Counsel

10.    Little, Lawrence L., State Court Prosecutor

11.    Pannell, James, Trial Counsel

12.    Robinson, David L., State Court Prosecutor

13.    Stuart, Scott, Former Counsel for Respondent-Appellee

14.    Swartzfager, Glenn S., Direct Appeal Counsel

i

*Charles Ray Crawford v. Burl Cain, et al.*, No. 20-61019

15.     Wood, Stephanie Breland, Former Counsel for Respondent-Appellee

/s/ *Vanessa Carroll*
Vanessa Carroll
Southern Center for Human Rights
60 Walton Street NW
Atlanta, Georgia 30303
(608) 354-7149
vcarroll@schr.org

*Counsel for Petitioner-Appellant*

## **STATEMENT OF COUNSEL PURSUANT TO FED. R. APP. P. 35(B)(1)**

Based on a reasoned and studied professional judgment, undersigned counsel believes that the panel decision raises two questions of exceptional importance.  The questions are:

1. Whether federal habeas corpus relief is available to petitioners whose claims do not involve factual innocence; and

2. Whether Charles Crawford is entitled to habeas relief under a proper analysis of his claims.

Undersigned counsel also believes that the panel decision is contrary to the following decisions of the Supreme Court of the United States and the precedents of this circuit and that consideration by the full court is necessary to secure and maintain uniformity of the court's decisions:

1. *Ford v. Wainwright*, 477 U.S. 399 (1986)

2. *Williams v. Taylor*, 529 U.S. 362 (2000)

3. *Miller-El v. Cockrell*, 537 U.S. 322 (2003)

4. *Wiggins v. Smith*, 539 U.S. 510 (2003)

5. *Rompilla v. Beard*, 545 U.S. 374 (2005)

6. *Miller-El v. Dretke*, 545 U.S. 231 (2005)

7. *Panetti v. Quarterman*, 551 U.S. 930 (2007)

8. *Abdul-Kabir v. Quarterman*, 550 U.S. 233 (2007)

9. *Porter v. McCollum*, 558 U.S. 30 (2009)

**10.** *Lafler v. Cooper*, 566 U.S. 156 (2012)

**11.** *Trevino v. Thaler*, 569 U.S. 413 (2013)

**12.** *Brumfield v. Cain*, 576 U.S. 305 (2015)

**13.** *Buck v. Davis*, 137 S. Ct. 759 (2017)

**14.** *McWilliams v. Dunn*, 137 S. Ct. 1790 (2017)

**15.** *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022)

**16.** *Brown v. Davenport*, 142 S. Ct. 1510 (2022)

**17.** *Proffitt v. Waldron*, 831 F.2d 1245 (5th Cir. 1987)

**18.** *Bouchillon v. Collins*, 907 F.2d 589 (5th Cir. 1990)

**19.** *Hughes v. Booker*, 220 F.3d 346 (5th Cir. 2000)

**20.** *Lockett v. Anderson*, 230 F.3d 695 (5th Cir. 2000)

**21.** *Miller v. Dretke*, 420 F.3d 356 (5th Cir. 2005)

**22.** *Virgil v. Dretke*, 446 F.3d 598 (5th Cir. 2006)

/s/*Vanessa J. Carroll*
*Counsel for Petitioner-Appellant*

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

STATEMENT OF COUNSEL PURSUANT TO FED. R. APP. P. 35(B)(1)......... iii

TABLE OF CONTENTS............................................................................................v

TABLE OF AUTHORITIES ................................................................................. vi

STATEMENT OF ISSUES FOR *EN BANC* CONSIDERATION ...........................1

COURSE OF PROCEEDINGS AND STATEMENT OF RELEVANT FACTS.....2

ARGUMENT ...........................................................................................................6

    I.    The Full Court Should Rehear This Case To Correct The Panel's Departure From Decades Of Federal Habeas Corpus Precedent.................6

        A.    The panel's holding that habeas relief is available only to factually innocent petitioners conflicts with federal law and Supreme Court precedent. ..........................................................................................6

        B.    The panel improperly denied Crawford relief on the merits of his claims..............................................................................................12

            1.    The panel's analysis of the *Ake* issue contains significant errors. ......................................................................................12

            2.    The panel failed to apply the proper legal standard to Crawford's ineffective assistance of counsel claim. ...................14

CONCLUSION .....................................................................................................16

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Abdul-Kabir v. Quarterman*, 550 U.S. 233 (2007)......................................9

*Ake v. Oklahoma*, 470 U.S. 68 (1985) ............................................ passim

*Bouchillon v. Collins*, 907 F.2d 589 (5th Cir. 1990) .................................9

*Brecht v. Abrahamson*, 507 U.S. 619 (1993)........................................10

*Brown v. Davenport*, 142 S. Ct. 1510 (2022) ................................. 5, 9, 10

*Brumfield v. Cain*, 576 U.S. 305 (2015) ...........................................9, 10

*Buck v. Davis*, 137 S. Ct. 759 (2017)...............................................9

*Corley v. United States*, 566 U.S. 303 (2009)......................................7

*Evitts v. Lucey*, 469 U.S. 387 (1985) .............................................14

*Ford v. Wainwright*, 477 U.S. 399 (1986) .......................................8, 10

*Hibbs v. Winn*, 542 U.S. 88 (2004) ................................................7

*Hinton v. Alabama*, 571 U.S. 263 (2014) .........................................15

*Hughes v. Booker*, 220 F.3d 346 (5th Cir. 2000).....................................9

*Lafler v. Cooper*, 566 U.S. 156 (2012) ...........................................8, 9

*Lockett v. Anderson*, 230 F.3d 695 (5th Cir. 2000) ..................................9

*Martinez v. Ryan*, 566 U.S. 1 (2012) .............................................11

*McWilliams v. Dunn*, 137 S. Ct. 1790 (2017)..............................9, 14, 16

*Miller v. Dretke*, 420 F.3d 356 (5th Cir. 2005).....................................9

*Miller-El v. Cockrell*, 537 U.S. 322 (2003) ........................................8

*Miller-El v. Dretke*, 545 U.S. 231 (2005) ............................................................8, 10

*Panetti v. Quarterman*, 551 U.S. 930 (2007)..........................................................8, 10

*Porter v. McCollum*, 558 U.S. 30 (2009)...............................................................9, 10

*Preiser v. Rodriguez*, 411 U.S. 475 (1973).................................................................12

*Proffitt v. Waldron*, 831 F.2d 1245 (5th Cir. 1987) .....................................................9

*Rompilla v. Beard*, 545 U.S. 374 (2005) ..............................................................8, 10

*Roundtree v. State*, 568 So. 2d 1173 (Miss. 1990) ....................................................16

*Shinn v. Ramirez*, 142 S. Ct. 1718 (2022)........................................................ 5, 9, 11

*State Oil Co. v. Khan*, 522 U.S. 3 (1997) ...................................................................9

*Strickland v. Washington*, 466 U.S. 668 (1984) ....................................... 1, 4, 13, 14

*Trevino v. Thaler*, 569 U.S. 413 (2013).....................................................................9

*Virgil v. Dretke*, 446 F.3d 598 (5th Cir. 2006) ..........................................................9

*Wiggins v. Smith*, 539 U.S. 510 (2003)....................................................... 8, 10, 14

*Williams v. Taylor*, 529 U.S. 362 (2000) ...................................................................8

**Statutes**

28 U.S.C. § 2243 ...........................................................................................................6

28 U.S.C. § 2244 ...........................................................................................................7

28 U.S.C. § 2254 .................................................................................................. passim

## STATEMENT OF ISSUES FOR *EN BANC* CONSIDERATION

The panel in this case announced an extraordinary and unprecedented rule—that habeas corpus relief is available *only* to those petitioners who demonstrate factual innocence. Op. at 13-19. No other court in the country limits habeas corpus in this way, and with good reason. The panel's holding conflicts with the text of the federal habeas corpus statute and contradicts decades of Supreme Court and circuit precedent recognizing the availability of federal habeas relief to petitioners with constitutional claims that do not turn on factual innocence. Through its new rule, the panel has foreclosed habeas relief to Charles Crawford because his underlying claims concern mental health and insanity, not factual innocence. Op. at 19.

The panel also committed critical errors in its analysis of Crawford's claims, and under a proper analysis, habeas relief is warranted. Crawford has such severe mental health issues that he had been civilly committed prior to the offense, giving him a uniquely strong basis for raising an insanity defense. But he was unable to meaningfully present an insanity defense at trial because the trial court denied his request for expert assistance under *Ake v. Oklahoma*, 470 U.S. 68 (1985). Under a proper analysis, Crawford was denied his right to expert assistance under *Ake*, and he also was denied his right to effective assistance of counsel at trial and on direct appeal under *Strickland v. Washington*, 466 U.S. 668 (1984). However, even if the

1

panel's errors on the *Ake* and *Strickland* claims were corrected, Crawford still would be denied relief under the panel's unprecedented holding that habeas relief is available *only* to those petitioners who make a showing of factual innocence. Op. at 13-19. Rehearing *en banc* is therefore necessary to correct a holding that wrongly denies habeas relief to Crawford and promises to create substantial confusion within the circuit.

## COURSE OF PROCEEDINGS AND STATEMENT OF RELEVANT FACTS

On December 9, 1991, Crawford was indicted for rape and kidnapping. ROA.1021. By the time of the indictment, Crawford had a well-documented history of psychiatric illness that included multiple suicide attempts, a 1989 civil commitment to the state hospital, a post-arrest psychiatric commitment, and a diagnosis of bipolar disorder for which he was prescribed Lithium. ROA.1869-2871, 2873, 2887. Crawford's attorney, Randy Fortier, was aware of this psychiatric history. He promptly noticed his intent to pursue an insanity defense and simultaneously asked the court, pursuant to *Ake v. Oklahoma*, 470 U.S. 68 (1985), for expert assistance to aid in the preparation and presentation of the defense. ROA.1040, 1051. In support of the *Ake* motion, Fortier provided the court with an affidavit from a psychologist who had reviewed Crawford's psychiatric history and found evidence of bipolar disorder and substance dependence that "could provide the basis for a defense of Not Guilty By Reason of

Insanity." ROA.1043. The psychologist recommended that Crawford undergo a full evaluation. ROA.1043.

Although counsel made the threshold showing for expert assistance under *Ake*, the court denied Crawford's motion on two separate occasions because the court maintained, contrary to *Ake*, that Crawford's right to expert assistance hinged on him first proving his insanity to the court. This occurred first at a hearing on April 21, 1992, when the court denied Crawford's *Ake* motion and ordered its own evaluation of Crawford to provide the court with an opinion "as to the defendant[']s ability to know right from wrong on the date of the alleged offense." ROA.1068-69. The court denied the *Ake* motion a second time at a hearing on September 14, 1992. This time, the court granted *the State's motion* to have Crawford examined at the state hospital (ROA.1101-04, 2096) but told the defense that Crawford could not get his own expert until the court obtained some "proof . . . regarding insanity." ROA.2097.

After Crawford was examined at the state hospital, Fortier withdrew from his representation, and the court appointed a new attorney, James Pannell, to represent Crawford. ROA.1106, 1360. Although Pannell decided to stay the course with an insanity defense, he did not urge the *Ake* motion a third time. He then attempted an insanity defense without any expert assistance (ROA.1647-98),

while the State had the benefit of two expert witnesses. ROA.1731-60. The jury rejected the insanity defense and convicted Crawford of rape. ROA.1250.

The Mississippi Supreme Court affirmed Crawford's conviction and sentence on August 27, 2015. ROA.826. Crawford then sought post-conviction relief in state court, raising three claims:

1) The trial court's denial of expert assistance violated *Ake*;

2) Appellate counsel's failure to raise the *Ake* claim on appeal deprived Crawford of effective assistance of appellate counsel; and

3) Trial counsel's failure to investigate and present expert testimony in support of the insanity defense deprived Crawford of effective assistance of trial counsel.

ROA.2434-45. The state court denied relief on December 15, 2016. ROA.3167.

Crawford then filed a petition for writ of habeas corpus in the Northern District of Mississippi. ROA.5. After the district court denied relief and issued a certificate of appealability (ROA.943, 946), Crawford appealed to this Court. He argued that the ineffective assistance of his appellate counsel provided cause and prejudice to excuse the default of his *Ake* claim on direct appeal, and that he was entitled to habeas relief under 28 U.S.C. § 2254(d) because the state court's rejection of his ineffective assistance of counsel claims was contrary to, and involved an unreasonable application of, *Ake* and *Strickland v. Washington*, 466 U.S. 688 (1984).

A panel of this Court affirmed the district court's denial of relief on three grounds. First, the panel determined that trial counsel withdrew the *Ake* motion before trial, which relieved appellate counsel of any duty to raise the claim on appeal. Op. at 8-9. The panel also held that Crawford received effective assistance of counsel at trial because it was possible that trial counsel made a strategic decision to pursue an insanity defense without expert assistance. Op. at 9-13.

In the final section of its opinion, the panel held that, even if Crawford's *Ake* and *Strickland* claims met the requirements of 28 U.S.C. § 2254(d), Crawford still was not entitled to relief because the Supreme Court's recent decisions in *Brown v. Davenport*, 142 S. Ct. 1510 (2022), and *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022), now compel federal courts to "apply a two-prong framework to adjudicate habeas petitions from state prisoners." Op. at 14. Habeas petitioners must now satisfy the Antiterrorism and Effective Death Penalty Act's ("AEDPA") requirements and show that "law and justice" also require habeas relief; and according to the panel, "law and justice do not compel issuance of the writ in the absence of factual innocence." Op. at 15. The panel further explained: "[I]n the context of law and justice, factual innocence is an assertion by the defendant that he did not commit the *conduct* underlying his conviction. By contrast, affirmative defenses do *not* implicate factual innocence, they implicate *legal* innocence." Op. at 18. And

because Crawford's claims "go to legal innocence—not factual innocence," the

panel held that "law and justice" required the panel to deny relief.  Op. at 19.

## ARGUMENT

I.    **The Full Court Should Rehear This Case To Correct The Panel's Departure From Decades Of Federal Habeas Corpus Precedent.**

A. **The panel's holding that habeas relief is available only to factually innocent petitioners conflicts with federal law and Supreme Court precedent.**

The panel's holding that habeas relief is available only in cases involving

factual innocence is unprecedented.  It is also untenable for at least three reasons.

***First***, the federal habeas statute does not support the panel's holding.  The

panel cites to 28 U.S.C. § 2243, which states that in "entertaining an application

for a writ of habeas corpus," the district court "shall summarily hear and determine

the facts, and dispose of the matter as law and justice require."  28 U.S.C. § 2243.

This part of the habeas statute says nothing about innocence, and the Supreme

Court has never interpreted the "law and justice" provision of § 2243 to require a

showing of factual innocence for habeas relief.

The rest of the habeas statute confirms that Congress did not intend for a

showing of factual innocence to serve as a requirement for relief.  When Congress

amended the statute in 1996 through AEDPA, it carved out two instances in which

a showing of innocence is required.  The first is found in 28 U.S.C. §

2254(e)(2)(B), which prohibits evidentiary hearings in federal court unless the

petitioner shows, among other things, that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." The second is found at 28 U.S.C. § 2244(b)(2)(B)(ii), which states that second or successive habeas petitions are barred unless the petitioner can show that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

The federal habeas statute does not contain any further references to innocence. This demonstrates that Congress considered the role of innocence in habeas corpus, and ultimately decided to limit it to serving as a procedural requirement for evidentiary hearings and successive petitions—a far cry from the sweeping innocence rule announced in the panel's decision. Moreover, the panel's holding would reduce the language pertaining to innocence in 28 U.S.C. § 2254(e)(2)(B) and 28 U.S.C. § 2244(b)(2)(B)(ii) to mere surplusage. This is an untenable reading of AEDPA. *See Corley v. United States*, 566 U.S. 303, 314 (2009) ("[O]ne of the most basic interpretive canons [is] that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'") (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)).

*Second*, consistent with the clear meaning of the habeas statute, the Supreme Court has granted habeas relief in many cases that did not turn on factual innocence and has held expressly that factual innocence is *not* required to obtain relief.  *See*, *e.g.*, *Lafler v. Cooper*, 566 U.S. 156, 169 (2012) (holding, in federal habeas case, "The fact that respondent is guilty does not mean he was not entitled by the Sixth Amendment to effective assistance or that he suffered no prejudice from his attorney's deficient performance during plea bargaining").  The following table illustrates the stunning volume of Supreme Court and Fifth Circuit cases that the panel's opinion contradicts, either because the courts granted habeas relief to petitioners with no claim of factual innocence, or because the courts rendered procedural rulings on claims that did not involve innocence without making any mention of an innocence requirement.

| | |
|---|---|
| **1.** | *Ford v. Wainwright*, 477 U.S. 399 (1986) |
| **2.** | *Williams v. Taylor*, 529 U.S. 362 (2000) |
| **3.** | *Miller-El v. Cockrell*, 537 U.S. 322 (2003) |
| **4.** | *Wiggins v. Smith*, 539 U.S. 510 (2003) |
| **5.** | *Rompilla v. Beard*, 545 U.S. 374 (2005) |
| **6.** | *Miller-El v. Dretke*, 545 U.S. 231 (2005) |
| **7.** | *Panetti v. Quarterman*, 551 U.S. 930 (2007) |

| 8. | *Abdul-Kabir v. Quarterman*, 550 U.S. 233 (2007) |
| 9. | *Porter v. McCollum*, 558 U.S. 30 (2009) |
| 10. | *Lafler v. Cooper*, 566 U.S. 156 (2012) |
| 11. | *Trevino v. Thaler*, 569 U.S. 413 (2013) |
| 12. | *Brumfield v. Cain*, 576 U.S. 305 (2015) |
| 13. | *Buck v. Davis*, 137 S. Ct. 759 (2017) |
| 14. | *McWilliams v. Dunn*, 137 S. Ct. 1790 (2017) |
| 15. | *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022) |
| 16. | *Brown v. Davenport*, 142 S. Ct. 1510 (2022) |
| 17. | *Proffitt v. Waldron*, 831 F.2d 1245 (5th Cir. 1987) |
| 18. | *Bouchillon v. Collins*, 907 F.2d 589 (5th Cir. 1990) |
| 19. | *Hughes v. Booker*, 220 F.3d 346 (5th Cir. 2000) |
| 20. | *Lockett v. Anderson*, 230 F.3d 695 (5th Cir. 2000) |
| 21. | *Miller v. Dretke*, 420 F.3d 356 (5th Cir. 2005) |
| 22. | *Virgil v. Dretke*, 446 F.3d 598 (5th Cir. 2006) |

"[I]t is [the Supreme] Court's prerogative alone to overrule one of its precedents." *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997). But that is what the panel has attempted to do here with a decision that conflicts directly with the many federal cases granting habeas relief to petitioners on claims that did not involve

factual innocence, such as *Wiggins v. Smith*, 539 U.S. 510 (2003), *Rompilla v. Beard*, 545 U.S. 374 (2005), and *Porter v. McCollum*, 558 U.S. 30 (2009), where the Supreme Court granted relief to petitioners alleging ineffective assistance of counsel at the *penalty phases* of their capital trials; *Ford v. Wainwright*, 477 U.S. 399 (1986) and *Panetti v. Quarterman*, 551 U.S. 930 (2007)—decisions holding that a death-sentenced petitioner can challenge his competency to be executed in federal habeas; and *Miller-El v. Dretke*, 545 U.S. 231 (2005) and *Brumfield v. Cain*, 576 U.S. 305 (2015), cases granting habeas relief based on race discrimination and intellectual disability, respectively.

   ***Third***, the panel's decision is not supported by *Brown v. Davenport* or *Shinn v. Ramirez*—the two Supreme Court decisions on which it purportedly relies. Both *Davenport* and *Ramirez* involved habeas claims that did not turn on factual innocence, yet the Supreme Court said nothing even remotely related to the idea that habeas petitioners must show factual innocence to obtain relief.

   In *Davenport*, the Supreme Court directed lower federal courts to apply both the prejudice test from *Brecht v. Abrahamson*, 507 U.S. 619 (1993) and the test from 28 U.S.C. § 2254(d) when reviewing claims adjudicated on the merits in state court. *Davenport*, 142 S. Ct. at 1517. Were factual innocence so critical to a federal court's authority to grant habeas relief, it would make little sense for the Supreme Court to write an opinion devoted to the need to apply both *Brecht* and

AEDPA to a shackling claim—a claim completely unrelated to factual innocence—without telling the lower courts that a petitioner also must make a showing of factual innocence to obtain relief.

*Shinn v. Ramirez* is similarly inapposite to the panel's holding. The question before the Supreme Court in *Ramirez* was whether the equitable rule announced in *Martinez v. Ryan*, 566 U.S. 1 (2012) allows petitioners to expand the factual record in federal court when their state habeas counsel failed to adequately develop the record in state court. *Ramirez*, 142 S. Ct. at 1727. Like *Davenport*, the primary claim at issue in *Ramirez*—ineffective assistance of counsel at the penalty phase of a capital trial—did not implicate factual innocence. *Id.* at 1728-29.[1] Nonetheless, the Supreme Court did not say that "law and justice" foreclosed habeas relief for this kind of claim. Rather, the Supreme Court held that petitioners who rely on *Martinez* to establish the cause and prejudice necessary to overcome the default of a *Strickland* claim in state habeas cannot expand the factual record in federal court unless they meet the stringent requirements in § 2254(e)(2). *Ramirez*, 142 S. Ct. at 1735-40.

The panel's decision on this issue marks a dramatic departure from precedent and the common law history of habeas corpus, which have made the writ

---

[1] Although the second petitioner in this case (Jones) was attempting to challenge his guilt, *see Ramirez*, 142 S. Ct. at 1729-30, the Supreme Court placed no significance on this distinction between the two cases in its decision.

available to individuals "in custody in violation of the Constitution," 28 U.S.C. § 2254(a), irrespective of any claim of factual innocence. *See Preiser v. Rodriguez*, 411 U.S. 475, 485-86 (1973) (collecting cases). If allowed to stand, the panel's opinion would create substantial confusion in the circuit. This is precisely the type of issue for which rehearing *en banc* is appropriate.

### B. The panel improperly denied Crawford relief on the merits of his claims.

#### 1. The panel's analysis of the *Ake* issue contains significant errors.

Crawford sought habeas relief under *Ake v. Oklahoma* because he was denied expert assistance—a significant issue given that his defense was insanity and the State attacked that defense with two experts of its own. The panel held that "Crawford's trial counsel withdrew his *Ake* motion," and appellate counsel cannot be faulted for failing to raise an unpreserved claim. Op. at 9. That holding rests on a critical error: **Crawford's trial counsel withdrew his *Ake* motion *in a different case*, not in this case**. The only exchange in which counsel indicated the withdrawal of an *Ake* motion went as follows:

> THE COURT:  Ex parte motion to provide funds for expert assistance.
>
> COUNSEL:  In case 5779 that's a moot question at this point.

ROA.1392. With that statement, counsel was addressing a separate case, No. 5779. Counsel never suggested that the *Ake* motion was moot or withdrawn as to

12

this case, No. 5780.  Moreover, appellate counsel testified that he failed to raise the *Ake* issue due to an oversight, not because of preservation concerns.  ROA.2496-97.[2]

The panel also held that even if the *Ake* claim were preserved, Crawford still would not be entitled to relief because he failed to show that the claim was "*so strong*" that his appellate counsel was ineffective for failing to raise it.  Op. at 9.  The panel's assessment of the claim is flawed.  In *Ake*, the Supreme Court held that once a defendant "makes a threshold showing to the trial court that his sanity is likely to be a significant factor in [the case]," he is entitled to an expert to "assist in evaluation, preparation, and presentation of the defense."  *Ake*, 470 U.S. at 82-83.  Here, Crawford made a substantial threshold showing based on his mental health history, but the trial court found that he was not entitled to his own expert *because he failed to provide proof of insanity*.  *See* ROA.2074 ("I can't make the determination [about whether to provide the defense with an expert] until I get someone telling me one way or the other."); ROA.2096 ("I haven't heard any proof.").

---

[2] The panel also stated that Crawford failed to show that his "appellate counsel's failure to raise [the *Ake* issue] was tantamount to providing no counsel at all."  Op. at 9.  The proper standard, however, is whether the appellate attorney performed unreasonably.  *See Strickland*, 466 U.S. at 688.

The trial court's ruling turned *Ake* on its head. The purpose of providing expert assistance is to ensure that the defendant has the ability to prove his insanity "within the adversary system." *Ake*, 470 U.S. at 77. By requiring "proof" of insanity as a prerequisite to expert assistance for the defense, the trial court undermined *Ake* and the adversarial process. The Supreme Court has rejected similar approaches to *Ake*, including under AEDPA review. *See McWilliams v. Dunn*, 137 S. Ct. 1790, 1799-1801 (2017).

### 2. The panel failed to apply the proper legal standard to Crawford's ineffective assistance of counsel claim.

To the extent that Crawford's counsel was required to do more to pursue expert assistance, as the panel held, the question is whether counsel performed deficiently under *Strickland v. Washington*, 466 U.S. 668 (1984). The panel required Crawford to show that he was "in no better position than one who has no counsel at all." Op. at 7 (quoting *Evitts v. Lucey*, 469 U.S. 387, 396 (1985)). But the proper inquiry is whether counsel performed unreasonably, and to address this, the panel was required to "consider the reasonableness of the investigation said to support [counsel's] strategy." *Wiggins v. Smith*, 539 U.S. 510, 527 (2003) (citing *Strickland*, 466 U.S. at 691). The panel's opinion says nothing about counsel's investigation, and instead points to counsel's failed use of an expert in one of Crawford's other trials as a sufficient justification to forego expert assistance in this case. Op. at 10. This approach does not comport with *Strickland*.

14

The panel's failure to review the reasonableness of counsel's investigation matters here because the state habeas record contains substantial, unrebutted evidence that counsel was aware Crawford had a history of seizures and blackouts (ROA.1647-50, 2543-46, 2594, 2599, 2605-06, 2918, 2925), suffered two seizures in jail while awaiting trial in this case (ROA.1704-05, 3029-58), and was told by at least two experts that Crawford likely had organic brain damage and needed to undergo neuropsychological testing (ROA.3009, 3157-58, 3161). Trial counsel never investigated any of this, which was plainly deficient under *Strickland*.

The panel also misapprehended the parallels between this case and *Hinton v. Alabama*, 571 U.S. 263 (2014). Crawford argued that *Hinton* demonstrated the unreasonableness of counsel's failure to obtain expert assistance. Pet'r. Br. 48-50. The panel, however, decided that *Hinton* did not furnish clearly established federal law for Crawford's *Strickland* claim because 1) unlike in *Hinton*, the core of the State's case here did not turn on expert testimony, and 2) counsel's failure to obtain expert assistance was not related to a mistake of law. Op. at 13. The panel was incorrect on both points.

The panel's position that this case is not like *Hinton* because the "core of the prosecution's case was proving the rape occurred, not that Crawford was sane," is inaccurate. *Id*. Under Mississippi law, once Crawford raised a reasonable doubt about his sanity, the burden shifted to the State to prove his sanity beyond a

reasonable doubt. *See Roundtree v. State*, 568 So. 2d 1173, 1181 (Miss. 1990).

The State used two expert witnesses to rebut the insanity defense (ROA.1731,

1752), and the trial court instructed the jury on the State's burden to prove sanity.

ROA.1774-77. Moreover, during his closing argument, counsel asked the jurors to

reject any theory of innocence and to find Crawford not guilty by reason of

insanity. ROA.1804-11.

The panel also erred in stating that "Crawford points to no mistake in law

that led to counsel's choice." Op. at 13. To the contrary, trial counsel testified that

he did not renew the motion for expert funds because he believed the court would

force him to use the same experts appointed for the State. ROA.3165. This was

based on a misunderstanding of *Ake*, which clearly established that Crawford was

entitled to an expert to assist the defense. *McWilliams v. Dunn*, 137 S. Ct. 1790,

1793 (2017). This case is accordingly on all fours with *Hinton*.

## CONCLUSION

For the foregoing reasons, Crawford respectfully requests that this Court grant

his petition for rehearing *en banc*.

Respectfully submitted,

/s/*Vanessa J. Carroll*
Vanessa Carroll
Southern Center for Human Rights
60 Walton Street NW
Atlanta, GA 30303
(608) 354-7149
vcarroll@schr.org

*Counsel for Petitioner-Appellant*

# CERTIFICATE OF SERVICE

The undersigned certifies that on January 27, 2023, the foregoing was filed with the Clerk of Court via the electronic filing system, which will send an electronic Notice of Docket Activity to the following Filing User:

Bridgette N. Grant
Special Assistant Attorney General
Mississippi Attorney General's Office
Post Office Box 220
Jackson, MS 39205
bridgette.grant@ago.ms.gov

"The court's electronic Notice of Docket Activity constitutes service of the filed document on all Filing Users."  5th CIR. R. 25.2.5.

/s/*Vanessa J. Carroll*
Vanessa Carroll
60 Walton Street NW
Atlanta, GA 30303
(608) 354-7149
vjcarroll@gmail.com

*Counsel for Petitioner-Appellant*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that:

1. This brief complies with this Court's January 23, 2023 order granting
   Petitioner-Appellant's motion to file petitions for hearing in excess of the
   word count set forth in Fed. R. App. 35(b)(2)(A), because—when added to
   the contemporaneously filed petition for panel rehearing—the petitions
   contain less than 4,900 words, excluding the parts of the document exempt
   under Fed. R. App. P. 32(f).  This document contains 3,983 words and the
   petition for panel rehearing contains 908 words.

2. This document complies with the typeface requirements of Fed. R. App. P.
   32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because
   this document has been prepared in a proportionally spaced typeface using
   Microsoft Word 2016 in Times New Roman, 14-point font for text.

*/s/Vanessa J. Carroll*
Vanessa Carroll
Southern Center for Human Rights
60 Walton Street NW
Atlanta, GA 30303
(608) 354-7149
vcarroll@schr.org

*Counsel for Petitioner-Appellant*

# APPENDIX A

Panel Opinion in *Crawford v. Cain*,
No. 20-61019 (5th Cir. Dec. 15, 2022)

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 15, 2022

Lyle W. Cayce
Clerk

No. 20-61019

Charles Ray Crawford,

*Petitioner—Appellant*,

*versus*

Burl Cain, *Commissioner, Mississippi Department of Corrections*;
Earnest Lee, *Superintendent, Mississippi State Penitentiary*,

*Respondents—Appellees*.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:17-CV-105

Before Smith, Duncan, and Oldham, *Circuit Judges*.

Andrew S. Oldham, *Circuit Judge*:

Charles Crawford petitions for habeas relief. As a prisoner held under a state court judgment, Crawford must overcome the strictures of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). He also must prove that "law and justice require" relief. 28 U.S.C. § 2243. Crawford does neither. We affirm.

No. 20-61019

## I.

## A.

Crawford was convicted of raping a 17-year-old girl (Kelly Roberts), assaulting a 16-year-old girl (Nicole Cutberth) with a hammer, and raping and murdering a 20-year-old woman (Kristy Ray). The series of gruesome crimes began on April 13, 1991.

On that fateful day, Roberts and Cutberth were riding around Walnut, Mississippi. The girls went to a store to purchase fluid for the car. When they left, they saw Crawford—who at that time was Roberts's brother-in-law—and asked him to help put the fluid in the car. Crawford agreed.

Crawford then began his scheme to lure the girls to his house. He told Roberts that he needed to talk to her about something important but refused to say what. Roberts insisted he tell her. Eventually, Crawford agreed to tell her if she met him at a cemetery outside the city. Roberts reluctantly agreed.

Later that evening, the girls met Crawford at the cemetery. There, Crawford told Roberts that her boyfriend had pictures of her that were "pretty bad," that Crawford had gotten the pictures from her boyfriend, and that Crawford planned to get rid of them. Roberts told Crawford she wanted the pictures. Crawford replied that the pictures were at his house and that he would take her there. Roberts and Cutberth then got into Crawford's truck, and he drove them to his house.

Crawford drove the girls to an abandoned house near his and parked. He told Cutberth to stay in the car while he and Roberts got the photos. Once Crawford and Roberts entered the house, Crawford told Roberts to stay by the door so he could make sure nobody was home. When Crawford returned, he pulled a gun and put it to Roberts's head. Crawford told her to do what he said and no one would get hurt.

No. 20-61019

He ordered Roberts to get onto the floor. Roberts obeyed. Crawford taped her mouth shut. He then commanded her to put her hands behind her back. Roberts again obeyed. Crawford taped her hands together. Crawford then forced Roberts into a bedroom and onto a bed. He undressed her. And then he raped her.

Afterwards, Roberts begged Crawford not to hurt her friend. But Crawford didn't listen. He went outside and bludgeoned Cutberth on the back of the head with a hammer. Roberts heard the assault happen. Crawford then went back inside the house, grabbed Roberts, and forced her into his truck.

Eventually, Crawford let Roberts go and turned himself in to the police. The police found Cutberth alive, recovered the gun, and found Roberts's and Crawford's hair on used pieces of duct tape in Crawford's house. Crawford was charged with the rape and kidnapping of Roberts and the aggravated assault of Cutberth.

But this was not the end of Crawford's crimes. Crawford was let out on bond. While out on bond, Crawford kidnapped 20-year-old Kristy Ray. He took Ray to a secluded barn in the woods, where he raped and murdered her. The police quickly arrested Crawford. And Crawford admitted to raping and murdering Ray and led the police to Ray's body. He was charged with capital murder, kidnapping, burglary of an occupied dwelling, rape, and sexual battery.

Crawford received three separate trials, which occurred in the following order: (1) the aggravated assault of Cutberth, (2) the rape and kidnapping of Roberts, and (3) the murder of Ray. For each, Crawford pressed an insanity defense. At the aggravated-assault trial (1) and the murder trial (3), Crawford had an expert testify that he was insane at the time of the incidents. At the rape trial (2), Crawford pressed a substantively

identical insanity defense but only had lay witnesses testify. He also challenged the kidnapping charge on the facts and the rape charge on the theories that Roberts consented, or alternatively, that Roberts and Crawford never had sex. Crawford was convicted of raping Roberts (but acquitted of kidnapping) and was sentenced to 46 years of imprisonment. Crawford was convicted of assaulting Cutberth and was sentenced to 20 years of imprisonment. Crawford was convicted of murdering Ray and was sentenced to death.

## B.

The present appeal involves only Crawford's conviction for raping Roberts. Crawford directly appealed his rape conviction in state court and almost succeeded in getting a new trial: The Mississippi Supreme Court affirmed his conviction by a 5–4 vote. *See Crawford v. State*, 192 So. 3d 905 (Miss. 2015).

Crawford next tried his luck at state postconviction relief. Again, he failed. Crawford argued for the first time that the trial court violated his procedural due process right to expert assistance in his insanity defense under *Ake v. Oklahoma*, 470 U.S. 68 (1985), along with many other claims. The Supreme Court of Mississippi held that Crawford procedurally defaulted his *Ake* claim because it "could have been raised in the direct appeal." The court also denied Crawford's ineffective-assistance-of-counsel claims and found the rest of Crawford's claims to be "without merit."

Crawford next filed a habeas petition in federal district court, raising thirteen claims. The district court denied Crawford's petition but granted Crawford a certificate of appealability ("COA") on all thirteen claims. Crawford timely appealed.

No. 20-61019

## II.

Crawford raises only three claims on appeal.[1] First, Crawford claims that his lawyer provided ineffective assistance by failing to raise an *Ake* claim on direct appeal. Second, Crawford raises an *Ake* claim and argues that the claim is not procedurally barred because his appellate counsel's ineffectiveness establishes cause and prejudice. Third, Crawford claims that his trial counsel provided ineffective assistance.

All fail. We first (A) provide some background on (1) AEDPA and (2) ineffectiveness claims. We then (B) conclude that Crawford failed to establish ineffective assistance of appellate counsel. We last (C) determine that Crawford has not established ineffective assistance of trial counsel.

## A.

## 1.

AEDPA first. Everyone agrees AEDPA's strictures—including its relitigation bar in 28 U.S.C. § 2254(d)—apply to each of Crawford's ineffectiveness arguments. *See Lucio v. Lumpkin*, 987 F.3d 451, 465 (5th Cir. 2021) (en banc) (plurality op.). Section 2254(d) "restores the *res judicata* rule" that long underpinned habeas "and then modifies it" by providing "narrow exceptions." *Langley v. Prince*, 926 F.3d 145, 155 (5th Cir. 2019) (en banc). As relevant here, Crawford must show the state court's adjudication of the claim "resulted in a decision that . . . involved an unreasonable

---

[1] Although Crawford obtained a COA on thirteen claims, Crawford provides arguments on only three claims and tries to incorporate by reference his application before the district court for the rest. He has thus abandoned the ten unbriefed claims. *See, e.g.*, *Turner v. Quarterman*, 481 F.3d 292, 295 n.1 (5th Cir. 2007) (arguments incorporated by reference from prior briefing are "not adequately briefed" and forfeited); *McGowen v. Thaler*, 675 F.3d 482, 497 (5th Cir. 2012).

application of[] clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

To meet the unreasonable-application exception to the relitigation bar, "a prisoner must show far more than that the state court's decision was merely wrong or even clear error." *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (per curiam) (quotation omitted). "Rather, the relitigation bar forecloses relief unless the prisoner can show the state court was *so* wrong that the error was 'well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Langley*, 926 F.3d at 156 (quoting *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (per curiam)). "In other words, the unreasonable-application exception asks whether it is 'beyond the realm of possibility that a fairminded jurist could' agree with the state court." *Ibid.* (quoting *Woods v. Etherton*, 578 U.S. 113, 118 (2016) (per curiam)).

To apply the relitigation bar, we first "must identify the relevant state-court 'decision.'" *Lucio*, 987 F.3d at 465. Here, the relevant decision is the sole state court opinion involving ineffectiveness: the Mississippi Supreme Court's order denying Crawford's application for leave to file a motion to vacate his conviction and sentence. ROA.3167–68. All agree that the court's denial of leave is a decision "adjudicat[ing] . . . the merits" of Crawford's ineffectiveness claims. *See* 28 U.S.C. § 2254(d). And for good reason. The Mississippi Supreme Court plainly rejected those claims on the merits: "The Court further finds that the claims of ineffective assistance of counsel fail to meet the *Strickland v. Washington* standard." ROA.3167; *cf. Harrington v. Richter*, 562 U.S. 86, 100 (2011) ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

But the Mississippi Supreme Court did not explain why it rejected Crawford's *Strickland* claim. This is significant. When "a state court's

decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. We "must determine what arguments or theories . . . *could have supported*[] the state court's decision; and then [we] must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* at 102 (emphasis added); *see also Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (per curiam) (same); *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011) (same). That is, we imagine the reasons that Story, Brandeis, and Frankfurter could've dreamt up to support the state court's decision, and then we ask whether every reasonable jurist would conclude that all those hypothetical reasons violate the relitigation bar. That makes § 2254(d) very close to a *res judicata* provision.

## 2.

Next, ineffective assistance of counsel. The Sixth Amendment generally obliges the State to provide an indigent defendant with counsel. *See* U.S. Const. amend. VI; *Gideon v. Wainwright*, 372 U.S. 335 (1963). But not just any counsel. According to the Supreme Court, States must provide effective counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). That's because "a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all." *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).

To establish ineffectiveness, Crawford must show that counsel's failure was both (1) objectively deficient and (2) prejudicial. *Strickland*, 466 U.S. at 687. "*Strickland*'s first prong sets a high bar." *Buck v. Davis*, 137 S. Ct. 759, 775 (2017). "To establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness." *Richter*, 562 U.S. at 104 (quotation

omitted). There is "a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Ibid.* (quotation omitted). And to show deficient performance, the defendant must show that his lawyer was so bad as to be "no counsel at all." *Lucey*, 469 U.S. at 396.[2]

AEDPA makes it even more difficult to win an ineffectiveness claim. The "more general the rule, the more leeway state courts have." *Kayer*, 141 S. Ct. at 523 (quotation omitted). And "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation omitted); *see also Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021) (per curiam) ("doubly deferential"); *Mirzayance*, 556 U.S. at 123 ("doubly deferential").

## B.

We now address the first two claims, each turning on whether Crawford's appellate counsel was ineffective for failing to raise *Ake* on direct appeal. "Declining to raise a claim on appeal . . . is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017). "In most cases, an unpreserved trial error will not be a plainly stronger ground for appeal than preserved errors." *Ibid.* "Thus, in most instances in which the trial court did not rule on the alleged trial error (because it was not preserved), the prisoner could not make out a substantial claim of ineffective assistance of appellate counsel." *Ibid.*

---

[2] Because Crawford's lone preserved *Strickland* claim fails at prong one, we need not discuss the prejudice prong in this case. *See infra* 10–13.

No. 20-61019

Here, the district court held the state court could've reasonably found the *Ake* claim unpreserved. We agree. Crawford's trial counsel withdrew his *Ake* motion, so the trial court never ruled on it. Crawford must thus show that every fairminded jurist would conclude that this is the extraordinary instance where an unpreserved claim was stronger than the preserved claims, and that appellate counsel's failure to press the unpreserved *Ake* claim was tantamount to providing no appellate counsel at all.

Crawford cannot come close to that showing. His appellate counsel raised numerous issues on direct appeal and nearly won a new trial from the State's highest court. *See Crawford*, 192 So. 3d at 905 (vote of 5–4). It thus borders on absurd to contend that appellate counsel was deficient for failing to raise an unpreserved claim, or that the state court transgressed the every-reasonable-jurist standard.

But even if the *Ake* claim were preserved, the ineffectiveness claim still fails. Even though Crawford has the burden to show ineffectiveness under AEDPA's strictures, he merely argues that he meets *Ake*. *See Burt v. Titlow*, 571 U.S. 12, 22–23 (2013) ("[T]he burden to show that counsel's performance was deficient rests squarely on the defendant." (quotation omitted)). That's not close to enough. He has not shown that his *Ake* argument is *so* strong that his appellate counsel's failure to raise it was tantamount to providing no counsel at all. *Lucey*, 469 U.S. at 396. And even if he could make that showing, which he doesn't even try to make, Crawford would still fail because he hasn't tried to show that his *Ake-Strickland* claim would satisfy AEDPA's relitigation bar.

## C.

Crawford's ineffective-assistance-of-trial-counsel claim fares no better. We (1) provide two independent reasons that doom Crawford's claim. Then we (2) reject Crawford's remaining counterarguments.

No. 20-61019

1.

A fairminded jurist could conclude that the trial counsel's performance was not deficient. That's for two independent reasons.

First, the jury found Crawford not guilty of the kidnapping charge. Crawford does not dispute that his counsel's performance contributed to this result. It's thus difficult to say that the State failed to provide Crawford with counsel that was effective to some extent and that Crawford was "in no better position than one who has no counsel at all." *Lucey*, 469 U.S. at 396.

Second, before the rape trial began, the same trial counsel tried an insanity defense in the related assault trial, and the jury rejected it—even though counsel presented an expert who testified that Crawford was insane. In the subsequent rape trial, counsel tried something different: He presented a substantively identical insanity defense but with lay testimony instead of the prior expert whose testimony was already rejected, and he tried to raise reasonable doubt as to the rape charge based on a theory of consent and a theory that Crawford and Roberts never had sex. A fairminded jurist could conclude that counsel made an adequate strategic choice not to do the same thing over again and expect a different result.

2.

Crawford's remaining counterarguments are unpersuasive.

Crawford argues that we can't evaluate trial counsel's overall conduct; instead, we must dissect the trial counsel's insanity-defense performance in a vacuum. But that has never been the law. In habeas applications, prisoners present *claims*. *See* 28 U.S.C. § 2254(d) ("claim"). As relevant here, the word "claim" in AEDPA means "a challenge to a particular *step* in the case, such as the introduction of a given piece of evidence, the text of a given jury instruction, *or the performance of counsel*."

No. 20-61019

*Brannigan v. United States*, 249 F.3d 584, 588 (7th Cir. 2001) (second emphasis added). Crawford raises a single claim based on his counsel's alleged ineffectiveness. *Cf. Jennings v. Stephens*, 574 U.S. 271, 276–82 (2015) (holding multiple *theories* of ineffectiveness still constitute a single *claim*). We therefore may not view counsel's performance with respect to each charge (or even each defense). Instead, we must view counsel's performance as a whole and determine whether it, on balance, fell below the constitutional minimum.

But even if we focused on the insanity defense alone, Crawford still cannot surmount AEDPA's relitigation bar. Contrary to Crawford's suggestion, every fairminded jurist would not think that the absence of an expert for an insanity defense is *per se* error. The Supreme Court has "often explained that strategic decisions—including whether to hire an expert—are entitled to a strong presumption of reasonableness." *Reeves*, 141 S. Ct. at 2410 (quotation omitted). That's why "*Strickland* does not . . . require[] for every prosecution expert an equal and opposite expert from the defense. . . . When defense counsel does not have a solid case, the best strategy can be to say that there is too much doubt about the State's theory for a jury to convict." *Richter*, 562 U.S. at 111. And Crawford's first jury heard his insanity defense, replete with expert testimony, and rejected it—thus showing counsel the defense was weak. *Cf. Mirzayance*, 556 U.S. at 124 ("Rather, his counsel merely recommended the withdrawal of what he reasonably believed was a claim doomed to fail. The jury had already rejected medical testimony about Mirzayance's mental state in the guilt phase, during which the State carried its burden of proving guilt beyond a reasonable doubt."). Thus, a fairminded jurist could find the strategic choice to cross-examine the State's experts and present lay testimony to be adequate performance.

No. 20-61019

Crawford offers a hodgepodge of cases, but none helps him. In fact, only one of his cases (*Hinton v. Alabama*, 571 U.S. 263 (2014) (per curiam)) could even potentially help him because *Hinton* is his only case that found deficient performance. *Id.* at 274. And we've held that only a case finding deficient performance can clearly establish the law for an ineffectiveness claim under § 2254(d). *See Lucio*, 987 F.3d at 485 ("We are aware of no authority for turning the Supreme Court's rejection of one prisoner's claim into clearly established law that supports a second prisoner's claim.").

*Hinton*, however, doesn't help either. If a state court "must extend a rationale" from *Hinton* before "it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision" and thus was not sufficient to pass the relitigation bar. *White v. Woodall*, 572 U.S. 415, 426 (2014). This follows from the statutory text: "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* [the Supreme] Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error." *Ibid.*

At the very least, a state court would've had to extend *Hinton* to grant relief here. In *Hinton*, the Court concluded that trial counsel's "failure to request additional funding in order to replace an expert he knew to be inadequate because he mistakenly believed that he had received all he could get under [state] law constituted deficient performance." 571 U.S. at 274. The Court found two features significant. First was that "the core of the prosecution's case was the state experts' conclusion . . . and effectively rebutting that case required a competent expert on the defense side." *Id.* at 273. Second was that counsel's failure "was based not on any strategic choice but on a mistaken belief that available funding was capped." *Ibid.*

No. 20-61019

Neither of the two features the Supreme Court found significant in *Hinton* is present here. *See, e.g.*, *Woods v. Donald*, 575 U.S. 312, 317–18 (2015) (per curiam) ("Because none of our cases confront the specific question presented by this case, the state court's decision could not be 'contrary to' any holding from this Court," nor an "unreasonable application" thereof. (quotation omitted)); *Langley*, 926 F.3d at 160 (collecting cases). Given defense counsel's hybrid strategy, the "core" of the prosecution's case was proving that the rape occurred, not that Crawford was sane. And Crawford points to no mistake in law that led to counsel's choice. On top of that, *Hinton* did not involve a situation where a jury previously rejected the substantively identical defense with expert assistance for a contemporaneous crime. These differences are fatal.

III.

Moreover, the Supreme Court recently released two landmark habeas decisions—*Brown v. Davenport*, 142 S. Ct. 1510 (2022), and *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022)—that direct us to refocus our attention in AEDPA cases. In *Davenport*, the Supreme Court made clear that "Congress invested federal courts with discretion when it comes to supplying habeas relief—providing that they 'may' (not must) grant writs of habeas corpus, and that they should do so only as 'law and justice require.'" 142 S. Ct. at 1523 (quoting 28 U.S.C. §§ 2241, 2243). This meant that AEDPA "did not guarantee relief upon . . . satisfaction" of its conditions; instead, "even a petitioner who prevails under AEDPA must still today persuade a federal habeas court that 'law and justice require' relief." *Id.* at 1524 (quoting 28 U.S.C. § 2243); *see also Pacheco v. El Habti*, 48 F.4th 1179, 1187–88 (10th Cir. 2022) (noting, even after AEDPA, federal courts retain "traditional equitable authority" (citing *Davenport*, 142 S. Ct. at 1524)).

No. 20-61019

About a month later, the Supreme Court in *Ramirez* doubled down on the proposition that passing AEDPA's strictures and the preexisting equitable doctrines are necessary but not sufficient to get habeas relief:

> To ensure that federal habeas corpus retains its narrow role, AEDPA imposes several limits on habeas relief, and we have prescribed several more. And even if a prisoner overcomes all of these limits, he is never entitled to habeas relief. He must still persuade a federal habeas court that law and justice require it.

142 S. Ct. at 1731 (quotation omitted).

*Davenport* and *Ramirez* thus indicate that courts should apply a two-prong framework to adjudicate habeas petitions from state prisoners.[3] The first prong is business as usual: whether the state prisoner satisfies AEDPA and the usual equitable and prudential doctrines (*e.g.*, procedural default and prejudicial error). *See Ramirez*, 142 S. Ct. at 1731 ("AEDPA imposes several

---

[3] Crawford is a state prisoner, so we need not determine whether federal courts may employ the two-prong framework in adjudicating § 2255 motions. *See United States v. Cardenas*, 13 F.4th 380, 384 n.* (5th Cir. 2021) ("Section 2255 is, of course, a statutory *substitute* for habeas corpus."); *Beras v. Johnson*, 978 F.3d 246, 252 (5th Cir. 2020) (explaining that while state prisoners file "applications," federal prisoners file "motions"). But there is good reason to think that federal courts can and should. The Supreme Court has made clear that "the '*sole purpose*' of § 2255 was to change the venue for challenges to a sentence." *Wright v. Spaulding*, 939 F.3d 695, 698 (6th Cir. 2019) (Thapar, J.) (emphasis added) (quoting *United States v. Hayman*, 342 U.S. 205, 219 (1952)). The Supreme Court has repeatedly emphasized that there is "no basis for affording federal prisoners a preferred status when they seek postconviction relief." *United States v. Frady*, 456 U.S. 152, 166 (1982); *see also Withrow v. Williams*, 507 U.S. 680, 723 (1993) (Scalia, J., concurring in part and dissenting in part) ("A federal court entertaining collateral attack against a state criminal conviction should accord the same measure of respect and finality as it would to a federal criminal conviction. As it exercises equitable discretion to determine whether the merits of constitutional claims will be reached in the one, it should exercise a similar discretion for the other."). For this reason, we generally apply the same equitable and prudential doctrines to federal and state prisoners. *See United States v. Vargas-Soto*, 35 F.4th 979, 996 & n.6 (5th Cir. 2022).

No. 20-61019

limits on habeas relief, and *we have prescribed several more*." (emphasis added) (quotation omitted)). The second prong is whether law and justice require granting habeas relief. *See ibid.* ("And *even if* a prisoner overcomes all of these limits, he is never entitled to habeas relief. He must still persuade a federal habeas court that law and justice require it." (emphasis added) (quotation omitted)). Much like qualified immunity after *Pearson v. Callahan*, 555 U.S. 223 (2009), both prongs are necessary to get relief and a court may analyze either one first.[4] *Id.* at 236.

We next (1) explain that law and justice do not compel issuance of the writ in the absence of factual innocence. Then we (2) conclude that Crawford can't make the required showing.

1.

As the Supreme Court recently reminded us, habeas is and always has been a discretionary remedy. *See Davenport*, 142 S. Ct. at 1520–24; *Ramirez*, 142 S. Ct. at 1731. In England, the "Great Writ" of habeas corpus *ad subjiciendum* gave common-law courts the discretionary power to investigate the Crown's basis for detaining its subjects. *See* Petition of Right, 3 Car. 1, ch.1, ¶¶ 5, 8 (1628). The Judiciary Act of 1789 gave our new federal courts that same power. *See* § 14, 1 Stat. 81–82. And modern federal courts retain it—though it remains, as always, a discretionary power and not a mandatory obligation. *See* 28 U.S.C. § 2241 ("Writs of habeas corpus *may* be granted . . . (emphasis added)); *id.* § 2243 ("as law and justice require").

_____

[4] Jurisdiction is the only exception. That's because "[i]n habeas proceedings, as in every other kind, federal courts must do jurisdiction first. And where jurisdiction is lacking, federal courts also must do jurisdiction last." *Davis v. Sumlin*, 999 F.3d 278, 279 (5th Cir. 2021) (quotation omitted). But whenever the court is assured of its jurisdiction, *Davenport* and *Ramirez* suggest that courts can perform either step first.

No. 20-61019

Law and justice do not require habeas relief—and hence a federal court can exercise its discretion not to grant it—when the prisoner is factually guilty. *See Davenport*, 142 S. Ct. at 1523 (concluding "guilt[]" is the primary consideration in evaluating whether "law and justice" require the writ (quotation omitted)); Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 142 (1970) ("[W]ith a few important exceptions, convictions should be subject to collateral attack only when the prisoner supplements his constitutional plea with a colorable claim of innocence."). Again, this comports with the historical office of the writ. For the first 500 or so years of the writ's existence, it generally could not be used to challenge a judgment of guilt. *See* Paul D. Halliday, Habeas Corpus: From England to Empire 16–18 (2010) (comparing *habeas corpus ad subjiciendum* to various medieval writs that courts used after Magna Carta); *id.* at 18 (dating the writ's emergence to the latter half of the fifteenth century). That's because the historical purpose of the writ was to ensure that the prisoner's detention comported with due process, and "a trial was generally considered proof he had received just that." *Davenport*, 142 S. Ct. at 1521 (citing *Bushell's Case*, 124 Eng. Rep. 1006, 1009–10 (C. P. 1670)).

Requiring prisoners to show factual innocence also comports with the federalism principles undergirding AEDPA. The Supreme Court emphasized that courts must "adjust the scope of the writ in accordance with equitable and prudential considerations." *Davenport*, 142 S. Ct. at 1523 (quotation omitted). "Foremost among those considerations is the States' powerful and legitimate interest in punishing the guilty." *Ibid.* (quotation omitted); *see also Ramirez*, 142 S. Ct. at 1731 ("To unsettle these expectations is to inflict a profound injury to the powerful and legitimate interest in punishing the guilty, an interest shared by the State and the victims of crime alike." (quotation omitted)); *ibid.* (describing the States' interests and the

significant costs of granting federal habeas relief). The States' preeminent interest is at its apex where, as here, the conviction occurred long before the federal postconviction proceedings. *See, e.g., Edwards v. Vannoy*, 141 S. Ct. 1547, 1554 (2021) ("When previously convicted perpetrators of violent crimes go free merely because the evidence needed to conduct a retrial has become stale or is no longer available, the public suffers, as do the victims."); *Herrera v. Collins*, 506 U.S. 390, 403, 417 (1993) (worrying that "the passage of time only diminishes the reliability of criminal adjudications" and worrying about "the enormous burden that having to retry cases based on often stale evidence would place on the States"). Requiring a state prisoner to show factual innocence in his federal habeas petition thus promotes federalism interests.

Requiring federal habeas petitioners to show factual innocence also protects other parties not before the court. When the Supreme Court erased "[t]he traditional distinction between jurisdictional defects and mere errors in adjudication," "[f]ederal courts struggled with an exploding caseload of habeas petitions from state prisoners." *Davenport*, 142 S. Ct. at 1522; *see also Langley*, 926 F.3d at 154 ("It was not until 1953 that state prisoners could use federal habeas proceedings to relitigate free-standing constitutional claims after pressing and losing them in state court."). Federal courts desperately needed "new rules aimed at separating the meritorious needles from the growing haystack." *Davenport*, 142 S. Ct. at 1523. After all, "[i]t must prejudice the occasional meritorious application to be buried in a flood of worthless ones. He who must search a haystack for a needle is likely to end up with the attitude that the needle is not worth the search." *Brown v. Allen*, 344 U.S. 443, 537 (1953) (Jackson, J., concurring in result). As Judge Friendly explained long ago:

> It defies good sense to say that after government has afforded a
> defendant every means to avoid conviction, not only on the

merits but by preventing the prosecution from utilizing probative evidence obtained in violation of his constitutional rights, he is entitled to repeat engagements directed to issues of the latter type even though his guilt is patent. A rule [requiring prisoners to show innocence] would go a long way toward halting the inundation; it would permit the speedy elimination of most of the petitions that are hopeless on the facts and the law, themselves a great preponderance of the total, and of others where, because of previous opportunity to litigate the point, release of a guilty man is not required in the interest of justice even though he might have escaped deserved punishment in the first instance with a brighter lawyer or a different judge.

Friendly, *supra*, at 157 (quotation omitted).

Factual innocence—not legal innocence—satisfies the law-and-justice requirement. And in the context of law and justice, factual innocence is an assertion by the defendant that he did not commit the *conduct* underlying his conviction. By contrast, affirmative defenses do *not* implicate factual innocence, they implicate *legal* innocence. *Cf. Bousley v. United States*, 523 U.S. 614, 623 (1998) ("It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency."). The same is true for assertions that the prisoner was sentenced under an unconstitutional statute or an erroneous interpretation of a statute.

The colorable-claim-of-factual-innocence requirement critically differs from the prejudicial-error requirement under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). While the prejudicial-error requirement forecloses "relief against constitutional claims on immaterial points, the test on collateral attack generally should be not whether the error could have affected the result but whether it could have caused the punishment of an innocent man." Friendly, *supra*, at 157 n.81. In other words, prejudicial error does not focus on factual innocence but on the significance of the error.

No. 20-61019

2.

Crawford has not made a colorable claim of factual innocence. Crawford does not deny that he committed the elements of the offense. He raped Roberts. Instead, he at most asserts that he wasn't legally culpable under Mississippi law because of the affirmative defense of insanity. *Cf.* ROA.963 ("Crawford has not provided this Court with any new evidence that, as a factual matter, would show that he did not commit the crime of conviction. Indeed, Crawford does not make the argument at all."). But affirmative defenses go to legal innocence—not factual innocence.

Even if insanity implicated factual innocence, Crawford's innocence claim is not colorable, so law and justice would still require denying his petition. *See* 28 U.S.C. §§ 2241, 2243. Crawford presented substantively identical insanity defenses at all three of his trials. At two of his trials, Crawford presented an expert witness to support his defense. Both juries flatly rejected that Crawford was insane. And one of the trials involved an incident contemporaneous with the rape of Roberts, and the same expert Crawford wanted for the rape trial (Dr. Hutt) testified at the assault trial. *See Crawford*, 787 So. 2d at 1240, 1243. The State also presented at all three trials two experts who opined that Crawford was sane. There is thus no colorable reason to think that Crawford is insane, much less that he is factually innocent.

\*    \*    \*

Crawford unquestionably raped a 17-year-old girl. AEDPA and "law and justice" both require denying his request for federal habeas relief.

AFFIRMED.