No. 20-61019

---

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

CHARLES RAY CRAWFORD,
*Petitioner-Appellant*

v.

BURL CAIN, COMMISSIONER, MISSISSIPPI DEPARTMENT OF
CORRECTIONS; EARNEST LEE, SUPERINTENDENT,
MISSISSIPPI STATE PENITENTIARY,
*Respondents-Appellees*

---

On Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:17cv105-SA-DAS

---

### PETITIONER-APPELLANT'S EN BANC BRIEF

---

Vanessa J. Carroll
Patrick Mulvaney
Southern Center for Human Rights
60 Walton Street NW
Atlanta, GA 30303
P: (404) 688-1202
F: (404) 688-9440
vcarroll@schr.org

Donald B. Verrilli, Jr.
Ginger D. Anders
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW
Suite 500E
Washington, DC 20001
P: (202) 220-1100
F: (202) 220-2300
Donald.Verrilli@mto.com

*Counsel for Petitioner-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

No. 20-61019 (5th Cir.)

CHARLES RAY CRAWFORD,
*Petitioner-Appellant*

v.

BURL CAIN, COMMISSIONER, MISSISSIPPI DEPARTMENT OF
CORRECTIONS; EARNEST LEE, SUPERINTENDENT,
MISSISSIPPI STATE PENITENTIARY,
*Respondents-Appellees*

The undersigned counsel of record certifies that the following listed persons
and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the
outcome of this case. These representations are made in order that the judges of this
court may evaluate possible disqualification or recusal.

1.     Bell, David, Former Appellate Counsel

2.     Carroll, Vanessa, Counsel for Petitioner-Appellant

3.     Verrilli, Jr., Donald B., Counsel for Petitioner-Appellant

4.     Anders, Ginger D., Counsel for Petitioner-Appellant

5.     Munger, Tolles & Olson LLP, Counsel for Petitioner-Appellant

6.     Coleman, R. Kenneth, Trial Judge

7.     Crawford, Charles Ray, Petitioner-Appellant

8.     Davis, Jason, L., Former Counsel for Respondent-Appellee

9.     Fortier, William R., Trial Counsel

i

10.     Grant, Bridgette, Counsel for Respondent-Appellee

11.     Holmes, George T., Former Counsel for Respondent-Appellee

12.     Levidiotis, Thomas C., Former Appellate Counsel

13.     Little, Lawrence L., State Court Prosecutor

14.     Mulvaney, Patrick, Counsel for Petitioner-Appellant

15.     Pannell, James, Trial Counsel

16.     Robinson, David L., State Court Prosecutor

17.     Stuart, Scott, Former Counsel for Respondent-Appellee

18.     Swartzfager, Glenn S., Direct Appeal Counsel

19.     Wood, Stephanie Breland, Former Counsel for Respondent-Appellee

Respectfully submitted,

Date: July 31, 2023

*/s/ Donald B. Verrilli, Jr.*
Donald B. Verrilli, Jr.
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW
Suite 500E
Washington, DC 20001
P: (202) 220-1100
F: (202) 220-2300
Donald.Verrilli@mto.com
*Counsel for Petitioner-Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

This Court has tentatively calendared this case for En Banc Oral Argument for the week of September 18, 2023.  Petitioner-Appellant agrees that oral argument is warranted because this case presents exceptionally important issues, and oral argument is likely to aid the Court's decisional process.

# <u>TABLE OF CONTENTS</u>

<div align="right"><u>Page</u></div>

CERTIFICATE OF INTERESTED PERSONS ....................................................... i

STATEMENT REGARDING ORAL ARGUMENT ..............................................iii

TABLE OF CONTENTS..................................................................................iv

TABLE OF AUTHORITIES ..............................................................................vi

STATEMENT OF JURISDICTION.......................................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................1

INTRODUCTION ................................................................................................2

STATEMENT OF THE CASE.............................................................................5

     A.    Pretrial Proceedings..................................................................5

     B.    Trial ...........................................................................................9

     C.    State Appellate and Post-Conviction Proceedings............................12

     D.    Federal Proceedings ..............................................................14

SUMMARY OF ARGUMENT ...........................................................................16

STANDARD OF REVIEW ................................................................................19

ARGUMENT ....................................................................................................19

I.    THE TRIAL COURT VIOLATED *AKE* BY DENYING EXPERT FUNDING, AND CRAWFORD'S APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THAT MERITORIOUS *AKE* CLAIM ON DIRECT APPEAL. ...........................................................19

     A.    Trial counsel preserved a meritorious *Ake* claim. ...............................21

     B.    Appellate counsel's failure to raise the *Ake* claim was deficient and prejudicial. ...........................................................................23

II.    CRAWFORD'S TRIAL ATTORNEY WAS INEFFECTIVE FOR FAILING TO OBTAIN EXPERT ASSISTANCE IN SUPPORT OF THE INSANITY DEFENSE. ........................................................................27

     A.    The panel failed to apply *Strickland*'s clearly established law...........28

     B.    Counsel's deficient performance prejudiced Crawford. ....................33

<div align="center">iv</div>

# TABLE OF CONTENTS
## (Continued)

**Page**

III.  THIS COURT SHOULD NOT ADOPT THE PANEL'S
UNPRECEDENTED REQUIREMENT OF FACTUAL
INNOCENCE AS A PREREQUISITE TO HABEAS RELIEF. ..................35

   A.  An innocence requirement cannot be reconciled with Section
2254's text. ...........................................................................36

   B.  History and precedent foreclose the panel's reliance on Section
2243's provision that courts shall "dispose of the matter as law
and justice require." ...............................................................37

      1.  The instruction that courts shall "dispose of the matter as
law and justice require" does not require, and has never
required, courts to deny habeas relief absent a showing of
innocence. ..................................................................39

      2.  Section 2243's "law and justice" provision does not grant
courts discretion to create an innocence requirement  or
to deny individual petitions for failure to show
innocence. ..................................................................46

   C.  Recent Supreme Court cases do not support the panel's actual-
innocence requirement. ...........................................................53

CONCLUSION ......................................................................................55

CERTIFICATE OF SERVICE .................................................................56

CERTIFICATE OF COMPLIANCE .........................................................57

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ake v. Oklahoma,*
  470 U.S. 68 (1985)..........................................................................passim

*Beavers v. Balkom,*
  636 F.2d 114 (5th Cir. 1981) ..............................................32

*Bouchillion v. Collins,*
  907 F.2d 589 (5th Cir. 1990) ..............................................32

*Brecht v. Abrahamson,*
  507 U.S. 619 (1993).......................................................22, 49

*Brown v. Davenport,*
  142 S. Ct. 1510 (2022)...........................................42, 53, 54

*Brown v. Walker,*
  161 U.S. 591 (1896).................................................................36

*Calderon v. Thompson,*
  523 U.S. 538 (1998).................................................................54

*Canales v. Stephens,*
  765 F.3d 551 (5th Cir. 2014) ..............................................31

*Coleman v. Thompson,*
  501 U.S. 722 (1991).................................................................49

*Cunningham v. Neagle,*
  135 U.S. 1 (1890)..............................................................41, 48

*Danforth v. Minnesota,*
  552 U.S. 264 (2008).................................................................48

*Evans v. United States,*
  504 U.S. 255 (1992).................................................................46

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Evitts v. Lucey*,
    469 U.S. 387 (1985) ......................................................... 15, 23, 25, 26

*Ex parte Garland*,
    71 U.S. 333 (1866) ................................................................................ 36

*Ex parte Lange*,
    85 U.S. 163 (1873) ................................................................................ 40

*Ex parte Milligan*,
    71 U.S. 2 (1866) ................................................................................... 36

*Ex parte Nielsen*,
    131 U.S. 176 (1889) ......................................................................... 42, 48

*Ex parte Wilson*,
    114 U.S. 417 (1885) ......................................................................... 42, 48

*Frank v. Mangum*,
    237 U.S. 309 (1915) .............................................................................. 41

*Free Enterprise Fund v. PCAOB*,
    561 U.S. 477 (2010) .............................................................................. 51

*Georgia v. Public.Resource.Org, Inc.*,
    140 S. Ct. 1498 (2020) .......................................................................... 43

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    579 U.S. 93 (2016) ................................................................................ 52

*Hammond v. Hall*,
    586 F.3d 1289 (11th Cir. 2009) ............................................................ 29

*Harrington v. Richter*,
    562 U.S. 86 (2011) ........................................................................... 19, 28

*Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*,
    139 S. Ct. 628 (2019) ............................................................................ 44

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Herrera v. Collins*,
506 U.S. 390 (1993)................................................................................53, 54

*Hill v. Texas*,
316 U.S. 400 (1942)................................................................................36, 52

*Hinton v. Alabama*,
571 U.S. 263 (2014)................................................................................27, 31

*Johnson v. Zerbst*,
304 U.S. 458 (1938)................................................................................43, 48

*Kaufman v. United States*,
394 U.S. 217 (1969)................................................................................44, 45

*Kimmelman v. Morrison*,
477 U.S. 365 (1986)...........................................................................45, 46, 50

*Kuhlmann v. Wilson*,
477 U.S. 436 (1986)......................................................................................49

*Kush v. Rutledge*,
460 U.S. 719 (1983)......................................................................................39

*Lafler v. Cooper*,
566 U.S. 156 (2012)......................................................................................46

*Lockett v. Anderson*,
230 F.3d 695 (5th Cir. 2000) .....................................................................30, 32

*McCleskey v. Zant*,
499 U.S. 467 (1991)......................................................................................48

*McQuiggin v. Perkins*,
569 U.S. 383 (2013)......................................................................................37

*McWilliams v. Dunn*,
582 U.S. 183 (2017)............................................................................21, 25, 31

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*In re Medley*,
  134 U.S. 160 (1890)..................................................................40, 41, 48

*Miller v. Dretke*,
  420 F.3d 356 (5th Cir. 2005) .............................................................32

*Moore v. Dempsey*,
  261 U.S. 86 (1923)......................................................................41, 42

*Murray v. Carrier*,
  477 U.S. 478 (1986)..........................................................................50

*NFIB v. OSHA*,
  142 S. Ct. 661 (2022).................................................................51, 52

*Profitt v. Waldron*,
  831 F.2d 1245 (5th Cir. 1987) ......................................................32, 35

*Rompilla v. Beard*,
  545 U.S. 374 (2005)..........................................................................27

*Rose v. Mitchell*,
  443 U.S. 545 (1979)..........................................................................45

*Salts v. Epps*,
  676 F.3d 468 (5th Cir. 2012) .............................................................19

*In re Savage*,
  134 U.S. 176 (1890)..........................................................................41

*Schneckloth v. Bustamonte*,
  412 U.S. 218 (1973)..........................................................................40

*Sears v. Upton*,
  561 U.S. 945 (2010)..........................................................................27

*Shapiro v. United States*,
  335 U.S. 1 (1948)..............................................................................43

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Shinn v. Ramirez*,
    142 S. Ct. 1718 (2022) .................................................................53, 54

*Stone v. Powell*,
    428 U.S. 465 (1976) ............................................................44, 45, 50

*Strickland v. Washington*,
    466 U.S. 668 (1984) .................................................................passim

*Teague v. Lane*,
    489 U.S. 288 (1989) ..........................................................................49

*United States v. Cronic*,
    466 U.S. 648 (1984) ....................................................................17, 25

*United States v. Texas*,
    143 S. Ct. 1964 (2023) ......................................................................51

*Wainwright v. Sykes*,
    433 U.S. 72 (1977) ............................................................................49

*Wiggins v. Smith*,
    539 U.S. 510 (2003) ..........................................................................30

*Wilkinson v. Dotson*,
    544 U.S. 74 (2005) ............................................................................48

*Williams v. Taylor*,
    529 U.S. 326 (2000) ............................................................26, 30, 31

*Wingo v. Wedding*,
    418 U.S. 461 (1974) ..........................................................................43

**STATE CASES**

*Brown v. State*,
    152 So.3d 1146 (Miss. 2014) ...............................................23, 26, 27

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Crawford v. State,*
  192 So.2d 905 (Miss. 2015) ................................................................13

*Evans v. State,*
  109 So.3d 1044 (Miss. 2013) ..............................................................26

*Harrison v. State,*
  635 So.2d 894 (Miss. 1994) ................................................................26

*Hearn v. State,*
  3 So.3d 722 (Miss. 2008) ....................................................................27

*Isham v. State,*
  161 So.3d 1076 (Miss. 2015) .........................................................26, 27

*Johnson v. State,*
  475 So.2d 1136 (Miss. 1985) ..............................................................32

*Lowe v. State,*
  127 So.3d 178 (Miss. 2013) ...........................................................26, 27

*Roundtree v. State,*
  568 So. 2d 1173 (Miss. 1990) .............................................................35

**FEDERAL STATUTES**

28 U.S.C. § 1291 ....................................................................................1

28 U.S.C. § 2241 ..............................................................................47, 50

28 U.S.C. § 2241(c) ............................................................................47

28 U.S.C. § 2241(c)(3) .......................................................................36

28 U.S.C. § 2243 ..........................................................................passim

28 U.S.C. § 2244(b)(2)(B) ................................................................37

28 U.S.C. § 2253 ....................................................................................1

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

28 U.S.C. § 2254 ....................................................................1, 36, 48, 55

28 U.S.C. § 2254(a) ...................................................................18, 36, 38

28 U.S.C. § 2254(d) .........................................................................19, 54

28 U.S.C. § 2254(e)(2)(B) .......................................................................37

Habeas Corpus Act of Feb. 5, 1867, Chapter 28, § I, 14 Stat. 385
    (codified at 28 U.S.C. §§ 2241-2255 (1976))................................39, 47

Rev. Stat. § 761 ........................................................................... passim

**LEGISLATIVE MATERIALS**

2 Cong. Rec. 1210 (Feb. 2, 1874)............................................................40

S. Rep. No. 80-1526 (1948) ....................................................................43

**OTHER AUTHORITIES**

Clarke D. Forsythe, *The Historical Origins of Broad Federal Habeas
    Review Reconsidered*, 70 Notre Dame L. Rev. 1079, 1089 (1995)...................40

Paul D. Halliday, *Habeas Corpus: From England To Empire* (2010)...................40

## STATEMENT OF JURISDICTION

The district court exercised jurisdiction over Charles Crawford's habeas petition pursuant to 28 U.S.C. § 2254.  After dismissing the petition, the district court issued a Certificate of Appealability and entered judgment on October 9, 2020. ROA.990, 997-99.  On October 30, 2020, Crawford filed a timely notice of appeal, ROA.999, and this Court has jurisdiction under 28 U.S.C. §§ 1291 and 2253.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.  Whether Crawford is entitled to federal habeas relief on his claim that the trial court violated *Ake v. Oklahoma*, 470 U.S. 68 (1985), by denying Crawford expert-witness funding that was clearly required under *Ake*.

2.  Whether Crawford's appellate counsel was ineffective for failing to raise the *Ake* claim where, contrary to the panel's conclusion, the *Ake* claim was preserved in the trial court.

3.  Whether, if this Court concludes that the *Ake* claim was not preserved in the trial court, Crawford is entitled to federal habeas relief on his claim of ineffective assistance of trial counsel, when counsel failed to preserve the *Ake* claim and failed to investigate Crawford's mental health or develop expert testimony supporting Crawford's insanity defense.

4.  Whether this Court should adopt the panel's holding that a colorable showing of factual innocence is a prerequisite to federal habeas relief.

1

# INTRODUCTION

This should have been a straightforward case granting federal habeas relief to address obvious constitutional errors that went to the very core of Charles Crawford's ability to have a fair trial in Mississippi state court—and thus to the reliability of the adversarial process that produced his conviction and sentence.

Crawford's state criminal trial focused on his mental health. The prosecution alleged that Crawford committed rape; the defense contended that he was not guilty by reason of insanity. ROA.1795, 1810. Crawford has a long and well-documented history of mental illness. He had been civilly committed two years before the offense at issue because a court determined that he was a "mentally ill person who pose[d] a substantial likelihood of physical harm to himself." ROA.2850. He has a history of seizures and "blackout spells." ROA.3040-42. He had been prescribed Lithium and other psychotropic medications by state doctors. ROA.2866. His family members had expressed concern because he "would not bathe [or] groom himself," and he was "someone entirely different day by day." ROA.2862-63. And subsequent neurological examinations revealed serious organic brain damage that could well have established an insanity defense. ROA.2914-21; ROA.2492. Nevertheless, the presiding state trial judge denied Crawford's repeated requests for funds necessary to retain an independent mental health expert to support his insanity defense—funds to which the Supreme Court's decision in *Ake* v. *Oklahoma*, 470

U.S. 68 (1985), entitled him.   Those rulings placed Crawford at an extreme disadvantage.  He was disarmed from making the only viable defense he had to the rape charge, while the prosecution, by contrast, presented unrebutted testimony from two state experts that Crawford was malingering and was not insane.  ROA.1729-67.   Making matters worse, Crawford's appellate counsel—in what counsel subsequently testified was an unconsidered oversight—failed to raise the *Ake* claim, a claim that almost certainly would have entitled Crawford to vacatur and a new trial.

That is a textbook case of ineffective assistance of counsel under the clearly established standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Appellate counsel's oversight resulted in the failure to present a constitutional claim that went to the heart of the fairness of Crawford's trial and that would almost certainly have resulted in the Mississippi Supreme Court vacating his conviction. Yet the Mississippi state court—in an unreasoned decision that was contrary to, and an unreasonable application of, *Strickland* and *Ake*—denied postconviction relief, and a panel of this Court denied federal habeas relief.  But the reasons the panel gave for doing so are meritless.  The panel absolved Crawford's appellate counsel on the theory that the *Ake* claim had been withdrawn by trial counsel and was therefore unpreserved.  But the undisputed record contradicts that finding.  The panel also held that even if the *Ake* claim were preserved, Crawford could not prevail because he

could not establish that appellate counsel's performance was so derelict that it was as if Crawford had no appellate counsel at all. That holding was, however, a radical departure from the test the Supreme Court prescribed in *Strickland*, which requires only that counsel's performance was objectively unreasonable under prevailing professional norms. Correcting for the panel's factual error, and applying *Strickland* as the Supreme Court wrote it, there is no conceivable basis for rejecting Crawford's ineffective appellate assistance claim.

But even if the panel were correct that Crawford's appellate counsel was not deficient because his trial counsel failed to preserve the *Ake* claim, that would merely establish ineffective assistance of counsel for a different but equally compelling reason: trial counsel would have forfeited a meritorious claim that could have resulted in vacatur of Crawford's conviction on appeal, and would have failed to pursue the development of powerful expert neurological testimony that could well have swayed the jury and rebutted the prosecution's expert testimony that Crawford was a malingerer. As with the appellate ineffective assistance claim, the panel applied the legally erroneous "no counsel at all" standard to reject Crawford's alternative ineffective assistance claim. Under *Strickland*, this claim, too, is meritorious and requires relief.

Finally, the panel lacked any basis in the text of the habeas statute, history, or Supreme Court precedent for taking the extreme step of holding that a petitioner

must make a colorable showing of factual innocence to obtain federal habeas relief. Such fundamental decisions about the nature and scope of habeas corpus belong to the Congress, not the judiciary. The legitimacy of our criminal justice system requires confidence that the procedures used to determine guilt or innocence are fair and reliable. Congress has been clear for more than a century that habeas relief is an important safeguard of fairness and reliability of the criminal process, even for prisoners who may be guilty. The panel was not free to reach a different judgment.

## STATEMENT OF THE CASE

### A.    Pretrial Proceedings

In 1991, a grand jury indicted Crawford for raping and kidnapping Kelly Roberts. ROA.1021. The same grand jury indicted Crawford for aggravated assault in connection with a related incident; that charge was given a different case number and was tried separately. ROA.2038.

Randy Fortier, Crawford's initial attorney, filed a notice of intent to pursue an insanity defense through "expert and lay testimony." ROA.1051. Because Crawford was indigent, Fortier sought funds for a mental health expert. ROA.1040. Fortier's motion stated that Crawford "suffers from various serious mental illnesses and disorders" and that his "mental condition will be a primary and significant factor" at trial. ROA.1041. The motion stated that the services of an expert were "necessary

to enable the Defendant to prepare effectively for trial, present evidence on his own behalf, and to cross-examine the State's expert witnesses." ROA.1041.

The motion was supported by an affidavit from Dr. L.D. Hutt, a psychologist who had conducted "a very preliminary evaluation" of Crawford's mental health based on Crawford's psychiatric hospitalization records. ROA.1043; ROA.2063. Dr. Hutt stated that Crawford exhibited Bipolar Affective Disorder and also may have "more severe, psychological disorders" that "could result in extreme emotional disturbance." ROA.1043. Dr. Hutt stressed the importance of further testing and stated that his "evaluation and trial services" would cost "a maximum of $3,000." ROA.1043.

At a hearing on the motion, Fortier invoked *Ake v. Oklahoma*, 470 U.S. 68 (1985), and stated, "[I]f we are going to present a proper insanity defense in the trial of this case it's vital that we have expert assistance."[1] ROA.2061. The State did not challenge Crawford's threshold showing of need; instead, it contended that Crawford should be examined by a psychiatrist of the State's choosing, not a defense expert. ROA.2064-65. Fortier conceded that the State could seek "an independent evaluation," but only after the defense received access to an expert to assist in the

---

[1] The hearing began as a combined hearing for this case, Case No. 5780, and the aggravated assault case, Case No. 5779. ROA.1040; ROA.2038. Fortier made clear that the motion for funds applied to both. ROA.2061.

"evaluation and preparation and presentation of the defendant[']s case." ROA.2066-67. Fortier stressed that the defense and prosecution requests were "two separate things," ROA.2068, and that Crawford "is entitled to a psychiatrist who is going to assist him" independent from the State, ROA.2067.

Despite finding that Crawford was indigent and "may be suffering from some illness which affects his ability to perceive the wrongfulness of his act," ROA.2068, 2072, 2074, the trial court refused the request for expert assistance. ROA.2069 ("I'm not going to spend $3,000 of Tippah County's money."). The court chose instead to "use the facilities that the State of Mississippi has without expense to Tippah County," and ordered an evaluation of whether Crawford "kn[e]w right from wrong on the date of the alleged offense." ROA.2068-69. The court stated that it would grant funds for a defense expert only if the State's experts first determined "one way or the other" whether Crawford was legally insane. ROA.2074.

At the next hearing, the court learned that a social worker, not a doctor, had evaluated Crawford. ROA.2092. The social worker's report noted that Crawford took Lithium for "Manic Depressive Illness," had a history of serious substance abuse, had attempted suicide twice, and had several family members with mental health and substance abuse disorders. ROA.2897-98. The report also noted that "some type of seizure disorder" possibly explained some of Crawford's issues. ROA.2899.

7

The prosecution then sought a further evaluation of Crawford. ROA.2092-94. Fortier contended again that *Ake* entitled Crawford "to have his expert assist him in the defense of this case," ROA.2093, and that the prosecution's proposal was a constitutionally inadequate substitute. ROA.2095. The court again rejected Fortier's request, stating that it would not grant the defense's request unless there was "proof . . . regarding insanity." ROA.2096-97.

The court then ordered that Crawford be evaluated at the state hospital. ROA.2096, 1101. The order confirms that the court granted the State's request for a sanity examination—*not* Crawford's motion for expert assistance. *See* ROA.1101; ROA.1103-04. Fortier objected. ROA.2101-04, 1105.

State doctors examined Crawford in December 1992. ROA.1131. They concluded that Crawford was malingering, had no serious mental illness, and had a personality disorder. ROA.1135-36.

Approximately one month later—just days before the trial was to begin—Crawford was arrested for a murder, and Fortier moved to withdraw based on a conflict of interest. ROA.1106-08. Before ruling on Fortier's motion to withdraw, the court ordered another examination of Crawford at the state hospital, again on the State's motion, to assess Crawford's competency to stand trial. ROA.726-29, 1360-64. The State's doctors again concluded that Crawford was malingering. ROA.729.

The court then granted Fortier's motion to withdraw and appointed James Pannell as counsel.  ROA.1143.

The following month, the court held a hearing for both this kidnapping and rape case and the separate aggravated assault case arising from the same incident. ROA.1389-1412.  At the hearing, Pannell stated that the motion for expert funds in Case Number 5779, the separate aggravated assault case, was moot; however, he did not say the same for the motion in this case.  ROA.1392.  He then reaffirmed that Crawford would present an insanity defense in the kidnapping and rape case. ROA.1392.

## B.    Trial

At trial, the prosecution sought to prove that Crawford brought Roberts to his home, raped her, kidnapped her, and took her to Memphis.  ROA.1481-86.  In his opening statement, Pannell told the jury that he did not know whether a crime occurred, but that if the jury found that Crawford committed the alleged offenses, they would need to decide whether Crawford was insane.  ROA.1491-94.

The prosecution's direct case relied principally on Roberts' testimony.  She testified that she knew Crawford because he was formerly married to her older sister. ROA.1544.  On the day in question, Crawford told Roberts that he needed to speak with her, so she and a friend went to his home.  ROA.1544-53.  Roberts further testified that after she entered the home, Crawford pulled out a gun, tied her hands

with duct tape, and raped her.  ROA.1554-57.  Crawford "had a blank look on his face" as these events transpired.  ROA.1582.  He then asked Roberts to shoot him, and when she refused, he asked her to travel with him to Memphis to speak with her sister.  ROA.1558-60.  Crawford arranged for a friend to drive them to Memphis, where they spent the night.  ROA.1561-66.  The next morning, Roberts called her sister to report the rape, ROA.1568-69, and Crawford called 911 to turn himself in, ROA.1515, 1568-69.

Pannell's defense focused on insanity, relying on testimony from lay witnesses and Crawford himself.  Crawford's mother testified that she took Crawford to a psychiatrist when he was a child because he heard voices.  ROA.1647.  Later, Crawford started to experience severe headaches and mood swings.  ROA.1648-50.  Crawford's mother described these episodes as "spells" because Crawford would get a "blank glare" on his face, his pupils would shrink, and he would suddenly become angry and violent.  ROA.1648-50, 1661, 1667.

Crawford's ex-wife testified that Crawford had emotional problems throughout their marriage.  ROA.1672.  She observed the same "spells" in which Crawford would get a severe headache, followed by changes to his eyes, personality, and behavior.  ROA.1673-74.  During these "spells," he would wake her up at night jerking, shaking, and crying.  ROA.1673.

Both women struggled to explain the source of Crawford's behavior. *See* ROA.1679 ("I'm not a doctor."); ROA.1682 ("I don't know what brought them on."); ROA.1687 ("I don't know how to explain it.").  Because neither witness was "qualified" as an expert, ROA.1653, 1678, the court prohibited them from testifying about Crawford's diagnoses, ROA.1648-49, the seriousness of his mental illness, ROA.1678-79, and whether he knew what he was doing during his spells or had any memory of them, ROA.1678.  As a result, Pannell's direct examinations elicited damaging testimony that both women were afraid of Crawford.  ROA.1652, 1669, 1678.

Crawford testified that he did not know whether he raped Roberts: "I can't honestly say that I didn't, and I can't sit here and tell you that I did. . . . because I don't know."  ROA.1703; *see also* ROA.1718, 1727.  He also testified to his history of mental illness, including two hospitalizations and a diagnosis of bipolar disorder.  ROA.1691-95.  He explained that he suffered "spells" and "blackouts" accompanied by headaches, blurred vision, and memory loss, but he could not explain why they occurred.  ROA.1697-98.

In rebuttal, the State called two expert psychiatrists: Dr. Reb McMichael, who had evaluated Crawford at the state hospital; and Dr. Stanley Russell, who treated Crawford in prison.  ROA.1729, 1752.  Both testified that Crawford did not suffer from any major mental illness.  ROA.1733-34, 1739, 1743, 1758-60.  Dr.

11

McMichael testified that Crawford was malingering his memory deficits, ROA.1760, and did not meet the definition of insanity, ROA.1757. Dr. Russell noted that Crawford's blackouts could be consistent with a complex partial seizure disorder but noted that further tests were needed to confirm that. ROA.1732-33, 1740.

The prosecution's closing argument emphasized that both of the experts who testified "said [Crawford] does not have a disease of the mind." ROA.1792; ROA.1795 ("[B]oth doctors told you that his memory lapses are not credible."); ROA.1794 ("[T]he director of the State Hospital . . . testified there's nothing wrong with him."). The prosecutor also argued that Crawford's mother and ex-wife were "afraid of him" and had testified only because they "have always covered for him." ROA.1793-94. In response, Pannell questioned whether Crawford committed the alleged offenses but concluded by arguing that "the better road" would be "to find him not guilty by reason of insanity." ROA.1809; *see also* ROA.1811.

The jury found Crawford not guilty of kidnapping but guilty of rape. ROA.1823-24. The court imposed a 46-year prison sentence. ROA.1827.

### C.     State Appellate and Post-Conviction Proceedings

Crawford appealed to the Mississippi Supreme Court. Glenn Swartzfager represented him as appointed counsel. ROA.2326; ROA.2021. Swartzfager did not challenge the trial court's violation of *Ake v. Oklahoma*—despite the fact that the

trial centered on the insanity defense and the testimony of the State's experts on that issue was unrebutted. ROA.2254-2307. The court affirmed Crawford's conviction and sentence. *Crawford v. State*, 192 So.2d 905, 912 (Miss. 2015).

Crawford then filed a postconviction application in the Mississippi Supreme Court. ROA.2433-88. He alleged that he was denied his right to expert assistance at trial under *Ake*; that his appellate counsel was ineffective for failing to raise the *Ake* issue on direct appeal; and that his trial counsel was ineffective for failing to investigate the case and secure appropriate expert assistance. ROA.2433-88. In support, Crawford submitted affidavits from both Pannell and Swartzfager. Pannell testified that he did not pursue Fortier's motion for an independent expert because it was his understanding that "the court would force [him] to use the experts at the Mississippi State Hospital—the very same experts that would testify for the State." ROA.3165. Swartzfager testified that he had "no strategic reason for not raising the denial of expert funding" on direct appeal and that omitting it was "an oversight." ROA.2497.

Crawford also submitted an affidavit from Dr. Siddhartha Nadkarni, who specializes in the treatment and diagnosis of epilepsy, to show why the absence of an independent defense expert prejudiced him. ROA.2492-94. Dr. Nadkarni conducted a neurological examination of Crawford, ROA.2914-21, and diagnosed him with "Severe Brain Injury" and "Partial Epilepsy." ROA.2920. He explained:

> [Crawford's] neurological examination was grossly abnormal and revealed significant central nervous system injury with evidence of brain injury as well. [Crawford] has had untreated and debilitating partial epilepsy from a very young age. He is severely brain injured from the epilepsy, repeated traumatic head injuries starting at a young age in a developing brain, and compounded by severe abuse and neglect as a child, and comorbid migraine headaches.

ROA.2492. Dr. Nadkarni also testified that Crawford's "spells" and "glazed look" indicated untreated epilepsy. ROA.2917. The spells "are most likely 'complex partial seizures,' meaning they start in a restricted area of the brain and then spread enough to cause alteration in awareness and behavior." ROA.2917-18. Dr. Nadkarni also testified that he believed Crawford was "in a state of repetitive partial complex seizures on the day of the rape," ROA.2493, which means that he "would have had no awareness of his actions, nor agency in committing them." ROA.2494. In sum, Dr. Nadkarni stated in his affidavit that Crawford "is a brain-injured man (corroborated both by history and his neurological examination) who was essentially not present in any useful sense due to epileptic fits at the time of the crime." ROA.2494.

The Mississippi Supreme Court summarily denied Crawford's post-conviction application on December 15, 2016. ROA.3167.

## D.   Federal Proceedings

Crawford then filed a habeas petition in the United States District Court for the Northern District of Mississippi, raising the issues from his state postconviction

application.  ROA.5-70; ROA.9-39.  The district court denied relief, but granted a certificate of appealability as to all claims.  ROA.943-88, 996-98.

On appeal, a panel of this Court affirmed.  Op.1-20 (May 19, 2023).  To establish ineffective assistance of counsel, the panel held, "the defendant must show that his lawyer was so bad as to be 'no counsel at all.'"  Op.8 (quoting *Evitts v. Lucey*, 469 U.S. 387, 396 (1985)).  Applying that heightened standard, the panel held Crawford's appellate counsel did not perform deficiently because the *Ake* claim was not properly preserved at trial and was not "*so* strong that . . . appellate counsel's failure to raise it was tantamount to providing no counsel at all."  Op.9.  The panel similarly held that Crawford's trial counsel was better than "no counsel at all" because he secured an acquittal on the kidnapping count.  *Id.*  The panel also found that trial counsel could have made a strategic decision not to investigate and present expert mental health evidence because the defense of insanity was unsuccessful in Crawford's separate trial for aggravated assault.  Op.10.

Sweeping more broadly, the panel also held that Crawford was not entitled to habeas relief because he did not "show factual innocence."  Op.16-17.  According to the panel, the "historical office" of habeas corpus and the "federal principles undergirding AEDPA" require proof of factual innocence as a prerequisite for habeas relief, Op.16, and "factual innocence" requires proof that the defendant "did

not commit the *conduct* underlying his conviction," Op.18—a ruling that would categorically preclude relief for any claim related to an insanity defense, *id.*

Crawford filed petitions for panel rehearing and rehearing en banc. This Court initially denied rehearing en banc, and the panel issued a revised opinion. Op.1. This Court subsequently granted rehearing en banc on its own motion.

## SUMMARY OF ARGUMENT

I.  Crawford's contentions that the trial court violated *Ake*, and that his appellate counsel was ineffective for failing to raise the claim, are meritorious under clearly established law, and entitle him to habeas relief.

Crawford's initial trial counsel established Crawford's entitlement to expert assistance under *Ake*, and the trial court's refusal to provide the assistance was constitutional error. Appellate counsel testified that his omission of the *Ake* claim was the result of an embarrassing oversight, not a strategic choice. Under governing law, that claim would almost certainly have entitled Crawford to vacatur of his conviction. A clearer case of ineffective appellate assistance is difficult to imagine.

The panel's rejection of the claim rests on two fundamental errors. First, the panel erred in concluding that appellate counsel could not be faulted for failing to raise the *Ake* claim because it was unpreserved. The undisputed record establishes otherwise. Second, the panel applied the wrong legal standard. According to the panel, Crawford could only prevail if appellate counsel performed so poorly that it

16

was as if Crawford had no counsel at all.  But that standard, derived from *United States v. Cronic*, 466 U.S. 648 (1984), is one that obviates the need to show prejudice in extreme cases of attorney malfeasance.  It is not a standard that every petitioner alleging ineffective assistance must meet to obtain relief.  In treating it as such, the panel departed from clearly established law.

The correct standard, which was stated with crystalline clarity in *Strickland v. Washington*, is whether "counsel's representation fell below an objective standard of reasonableness," measured "under prevailing professional norms."  466 U.S. 668, 688 (1984).  An unintentional oversight that forfeits a plainly meritorious constitutional claim entitling a defendant to a new trial plainly falls below the objective standard of reasonableness that *Strickland* requires.  Crawford's entitlement to relief under clearly established law is indisputable.

II.  Crawford's alternative argument—that, if trial counsel did abandon his right under *Ake* to expert assistance, the failure to preserve the argument and to develop and present expert testimony supporting the insanity defense denied Crawford the effective assistance of counsel at trial—is also meritorious and entitles him to habeas relief.

A failure to preserve Crawford's plainly meritorious *Ake* claim would itself fall below *Strickland*'s objective standard of reasonableness.  Beyond that, substitute trial counsel's failure to develop readily available, powerful expert testimony

17

supporting the insanity claim that was the linchpin of Crawford's defense also falls below *Strickland*'s objective standard of reasonableness. And counsel's reason for failing to investigate—his belief that the trial court would limit him to relying on the prosecution's doctors—was a basic legal error that cannot excuse deficient performance.

III. The panel's alternative holding that Section 2243 required Crawford to make a colorable showing of factual innocence in order to obtain habeas relief lacks any basis in the law and should be rejected.

The habeas statute provides in plain terms that a petitioner who proves that he "is in custody in violation of the Constitution or laws or treaties of the United States" on the basis of "clearly established law" is entitled to relief. 28 U.S.C. § 2254(a); 2254(d). Nothing in the actions of Congress or the Supreme Court in the century and a half since the federal habeas statute was first enacted supports the conclusion that Section 2243's instruction to dispose of petitions "as law and justice require" requires or even permits federal courts to demand a showing of innocence before granting habeas relief. The judicial imposition of such a sweeping and fundamental change in habeas law would far exceed the proper role of the courts in our system of separation of powers.

## STANDARD OF REVIEW

This Court "reviews the district court's findings of fact for clear error and its conclusions of law *de novo*," while also "applying the same standards to the state court's decision as did the district court." *Salts v. Epps*, 676 F.3d 468, 473 (5th Cir. 2012) (quotation omitted). Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Crawford must show, as relevant here, that the state court's adjudication of his claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

Because the state court rejected Crawford's claims in an unexplained order, Crawford must show "there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). Once Crawford meets his burden under 28 U.S.C. § 2254(d), this Court reviews his claim *de novo*. *See Salts*, 676 F.3d at 480.

## ARGUMENT

**I.    The trial court violated *Ake* by denying expert funding, and Crawford's appellate counsel was ineffective for failing to raise that meritorious *Ake* claim on direct appeal.**

Crawford's trial counsel requested expert assistance to support his insanity defense, but the trial court declined to provide it. In pretrial proceedings, counsel notified the court of Crawford's intent to pursue an insanity defense, ROA.1051, and

19

then, in accordance with *Ake*, he sought funds for expert assistance. ROA.1041. The motion included an affidavit from a psychologist who had reviewed Crawford's psychiatric records and found evidence of mental illness that could support an insanity defense. ROA.1043. Crawford thus made the necessary "threshold showing . . . that his sanity [was] likely to be a significant factor in his defense," *Ake*, 470 U.S. at 82. The trial court nevertheless refused to follow *Ake* and instead insisted that the State's experts—who were working for the prosecution—had to determine that Crawford was insane before the court would provide him with expert assistance. ROA.2068-69, 2074, 2096-97. That *Ake* violation warranted a new trial.

Notwithstanding this obvious constitutional error, Crawford's appellate counsel failed to brief the *Ake* violation on appeal due to an unintentional "oversight." ROA.2497. That textbook ineffective assistance of appellate counsel violated Crawford's Sixth Amendment right and establishes cause and prejudice for the failure to raise the *Ake* claim on appeal.

The panel made two dispositive errors in rejecting Crawford's ineffective assistance claim. First, it held, incorrectly, that the underlying *Ake* claim was not preserved at trial because Crawford's counsel withdrew the *Ake* motion. Op.8-9. That motion was never withdrawn, and the claim was fully preserved. Second, it disregarded the clearly-established standard set forth in *Strickland v. Washington* for adjudicating ineffectiveness claims, and instead required Crawford to meet the much

20

higher standard that appellate counsel's failure was "tantamount to providing no appellate counsel at all." Op.9. Applying that incorrect standard, the panel reached the unprecedented conclusion that, even if the *Ake* claim had been preserved, the acknowledged "oversight" of appellate counsel in failing to present that meritorious claim to the Mississippi Supreme Court was not ineffective because counsel raised other (unmeritorious) claims on appeal.

The panel opinion thus provides no reasonable basis on which the state court could have rejected Crawford's claim that his appellate counsel fell short of what the Sixth Amendment requires.

## A. Trial counsel preserved a meritorious *Ake* claim.

In *Ake*, the Supreme Court held that when an indigent defendant "demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense." 470 U.S. at 83. And the Supreme Court has made clear that, for AEDPA purposes, *Ake* "clearly established" an indigent defendant's right to an expert "*independent from the prosecution*." *McWilliams v. Dunn*, 582 U.S. 183, 186 (2017) (emphasis added). It has thus been clearly established since 1985 that the kind of independent expert assistance Crawford sought is essential to a fair trial because it is "a virtual necessity

21

if an insanity plea is to have any chance of success." *Ake* 470 U.S. at 81; *see id.* at 77.

The trial court disregarded *Ake*'s clearly established rule. Crawford made the showing *Ake* requires to receive independent expert assistance. *See* pp. 5-7, 18-19, *supra.* The trial court nevertheless held that Crawford first had to prove his insanity to the court before he could have what *Ake* entitles him to, and that he would not grant Crawford's motion unless the State's experts first evaluated Crawford and concluded that he was likely insane. *See* pp. 7-8, *supra*; ROA.2069 ("I'm not going to spend $3000 of Tippah County's money"). The trial court thus made proof of insanity a precondition to expert assistance. That is irreconcilable with *Ake*'s requirement that a defendant need only make a "threshold showing" that "his sanity is likely to be a significant factor in his defense." *Ake*, 470 U.S. at 82-83. Even worse, the court directed the State's experts to make this determination, giving the State the power to foreclose Crawford's access to the expert assistance that was necessary for a meaningful adversarial process—which is exactly what happened.

That constitutional error unquestionably had a "substantial and injurious effect or influence" on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). As the Supreme Court observed in *Ake*, expert assistance is a "virtual necessity if an insanity plea is to have any chance of success." 470 U.S. at 81. That is particularly true here, where the State relied on two experts to meet its burden of

proving Crawford's sanity. Crawford was denied "the raw materials integral to the building of an effective defense" because he did not have his own expert to assist with his defense and the cross-examination of the State's experts. *Brown v. State*, 152 So.3d 1146, 1166 (Miss. 2014) (due process violated where trial court denied defendant's *Ake* motion and prosecution relied solely on expert witness to show culpability) (quoting *Ake*, 470 U.S. at 77).

In short, a meritorious *Ake* claim was preserved at trial. For the reasons stated below, appellate counsel's ineffectiveness establishes cause and prejudice for Crawford's failure to raise the claim on appeal, and also provides a distinct ground for relief.

## B.    Appellate counsel's failure to raise the *Ake* claim was deficient and prejudicial.

The Sixth and Fourteenth Amendments guarantee the right to the effective assistance of counsel on appeal as well as at trial. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Strickland v. Washington*, 466 U.S. 668 (1984). To establish a Sixth Amendment violation, the petitioner must show that counsel performed deficiently, meaning that counsel's representation "fell below an objective standard of reasonableness" measured "under prevailing professional norms." *Strickland*, 466 U.S. at 688. The petitioner must also show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The panel held that appellate counsel's failure to raise the *Ake* claim on direct appeal was reasonable because the claim had been withdrawn by Crawford's substitute trial counsel (Pannell) and therefore was not preserved. That was wrong: trial counsel withdrew the *Ake* motion *in a different case*, but left it in place in this one. The only exchange in which counsel mentioned the withdrawal of an *Ake* motion went as follows:

> THE COURT:    Ex parte motion to provide funds for expert assistance.
>
> COUNSEL:      In case 5779 that's a moot question at this point.

ROA.1392. Counsel's statement addressed a separate case, No. 5779. Counsel never suggested that the *Ake* motion was moot or withdrawn as to this case, No. 5780. Indeed, it is particularly striking that the panel would rely on this ground to reject the claim. Crawford's appellate counsel testified that he did not make a conscious decision to forego the *Ake* claim on appeal—based on the belief it was forfeited, or for any other reason—and that his failure to do so was instead an oversight. ROA.2497. There is thus no conceivable basis for concluding that appellate counsel acted reasonably in omitting the *Ake* claim.[2]

---

[2] Nor can appellate counsel's failure be excused based on the district court's conclusion that the trial court never denied counsel's request for funds. ROA.958-59. The court repeatedly rejected counsel's request, and held that Crawford was not entitled to funds unless the State's experts concluded that he was insane. ROA.2074; 2091; 2097. But it is clearly established that a defendant's *Ake* right cannot be made

Moreover, in holding that appellate counsel's performance was acceptable even if the *Ake* claim had been preserved at trial, the panel did not apply the clearly established *Strickland* test. 466 U.S. at 688. Instead, the panel held that Crawford had to show that counsel's failure to raise *Ake* on appeal was "tantamount to providing no counsel at all." Op.9 (citing *Evitts*, 469 U.S. at 396). That is a serious misreading of *Strickland*. The phrase "no counsel at all" appears just once in *Strickland*: inside a parenthetical in a footnote in Justice Brennan's partial concurrence, noting that counsel's incompetence "can be so serious that it rises to the level of a constructive denial of counsel which can constitute constitutional error without any showing of prejudice." *Strickland*, 466 U.S. at 703 n.2 (Brennan, J. concurring in part) (citing *United States v. Cronic*, 466 U.S. 648, 659-660 (1984)). *Strickland* was thus referring to the distinct *Cronic* claim for constructive denial of counsel—where the higher standard (counsel's performance was equivalent to having no counsel at all) eliminates any need to prove prejudice.[3]

---

contingent on the judgment of prosecution experts. *McWilliams*, 582 U.S. at 186. So the trial court had no legal basis to reject Crawford's request.

[3] The panel was equally off-base in relying on *Evitts'* statement that "a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all." Op.8; *Evitts*, 469 U.S. at 396. The Court's point was that the existing right to counsel on direct appeal would be meaningless unless the Constitution also required that appellate counsel be effective. The Court's statement did not obliquely alter the existing *Strickland* standard for ineffective assistance.

Under the standard prescribed in *Strickland*, appellate counsel's failure to raise *Ake* on appeal was an obvious Sixth Amendment violation. The Mississippi Supreme Court had repeatedly granted relief for *Ake* claims. *See Harrison v. State*, 635 So.2d 894 (Miss. 1994); *Evans v. State*, 109 So.3d 1044 (Miss. 2013); *Lowe v. State*, 127 So.3d 178 (Miss. 2013); *Brown*, 152 So.3d at 1166 (due process violated where trial court denied defendant's *Ake* motion and prosecution relied solely on expert witness to show culpability); *Isham v. State*, 161 So.3d 1076 (Miss. 2015). Crawford's claim was at least as strong as those on which the Mississippi Supreme Court had granted relief—which is doubtless why, when the Mississippi Supreme Court at oral argument expressed dismay at appellate counsel's failure to raise the claim, counsel was "stunned," "upset," and "embarrassed" because he never made a strategic decision to omit the claim. ROA.2497.

Led astray by its focus on the wrong Sixth Amendment standard, the panel held that appellate counsel was not deficient because he raised *other* preserved claims. Op.9. But *Strickland* requires an evaluation whether a specific decision by counsel, in this case the omission of a claim that would have entitled Crawford to a new trial, was reasonable. *See, e.g.*, *Williams v. Taylor*, 529 U.S. 326, 395 (2000) (finding counsel's penalty phase representation deficient where counsel "competently handled the guilt phase of the trial"); *Rompilla v. Beard*, 545 U.S. 374, 381-82 (2005) (counsel was ineffective despite performing some mitigation

26

investigation that revealed "nothing useful"); *Sears v. Upton*, 561 U.S. 945, 955 (2010) ("counsel's effort to present *some* mitigation evidence" does not foreclose "inquiry into whether a facially deficient mitigation investigation might have prejudiced the defendant"); *Hinton v. Alabama*, 571 U.S. 263, 268 (2014) (counsel ineffective where he "made an extensive search for a well-regarded expert" but selected an unqualified one). Given the egregious nature of the trial court's *Ake* violation and the number of favorable *Ake* opinions from the Mississippi Supreme Court, there is only one answer: no.

Prejudice is also clear. Just as in *Isham*, *Lowe*, and *Brown*, where "the State relie[d] on expert testimony alone to prove . . . an element" of its case, *Isham*, 161 So.3d at 1083, the State here relied on two experts to meet its burden of proving Crawford's sanity, but Crawford was denied the ability to build a defense and rebut the State's experts. *See Hearn v. State*, 3 So.3d 722, 738 (Miss. 2008); *Brown*, 152 So.3d at 1166; *see* pp. 7-12, *supra*. Crawford was deprived of his rights under *Ake* and *Strickland*, and there is no reasonable basis on which the state court could have reached a contrary conclusion.

## II.  Crawford's trial attorney was ineffective for failing to obtain expert assistance in support of the insanity defense.

If this en banc Court were nonetheless to agree with the panel that Crawford's trial counsel failed to preserve his *Ake* claim and that this failure absolves appellate counsel's failure to raise the claim, that would not justify denying habeas relief. It

would instead require the Court to conclude that trial counsel's failure to preserve that self-evidently meritorious claim, and concomitant failure to obtain and present expert testimony to support the insanity defense, was itself ineffective assistance.

### A.    The panel failed to apply *Strickland*'s clearly established law.

The panel offered two justifications for rejecting Crawford's alternative ineffective assistance argument—trial counsel performed effectively in other respects and could have made a reasonable strategic decision to forego expert testimony to establish an insanity defense.  But, under clearly established Supreme Court precedent, neither ground presents a "reasonable basis for the state court to deny relief."  *Harrington v. Richter*, 562 U.S. at 98.

The first of those reasons violates clearly established Supreme Court law in two dispositive respects.  The panel required Crawford to establish that he was in no better position than one who has no counsel at all.  Op.10.  As demonstrated, however, that is not the test under *Strickland*.  *See* pp. 23-25, *supra*.  Crawford's burden was to establish that counsel's performance was deficient under prevailing professional standards, and he met that burden.

In the same vein, the panel's reliance on trial counsel's adequate performance on other issues has no bearing on whether he performed deficiently by failing to preserve a meritorious *Ake* claim and failing to obtain expert testimony to prove insanity.  *See* pp. 26-27, *supra*.  *Strickland* recognizes that counsel's deficient

performance violates the Sixth Amendment when it likely had an "effect on *the judgment*"—and deficient performance with respect to one defense can affect "the judgment" regardless of counsel's performance with respect to other defenses. 466 U.S. at 691. Because Crawford's meritorious *Ake* claim would have certainly resulted in vacatur of his conviction, any failure to preserve that claim self-evidently would have changed the judgment in his case. *See also Hammond v. Hall,* 586 F.3d 1289, 1324 n.12 (11th Cir. 2009) ("An industrious effort on behalf of his client on other fronts does not bar a claim that trial counsel rendered ineffective assistance in one or more specific ways.").

The panel's alternative conclusion that trial counsel could have made an "adequate strategic choice" to establish an insanity defense based solely on lay testimony is also irreconcilable with clearly established Supreme Court precedent, and there is no reasonable basis on which the state court could have concluded otherwise.

Counsel's strategic choices are deemed reasonable only if based on an investigation sufficient to enable counsel to make a reasonably informed decision. Indeed, it has been clearly established for decades that a reviewing court must evaluate "the reasonableness of [counsel's] investigation said to support [their] strategy." *Wiggins* v. *Smith*, 539 U.S. 510, 527 (2003); *see also Williams*, 529 U.S.

29

at 396; *Strickland*, 466 U.S. at 690-91; *Lockett v. Anderson*, 230 F.3d 695, 714 (5th Cir. 2000).

There is no reasonable basis on which the state courts could have concluded that trial counsel investigated Crawford's mental health history sufficiently to justify forgoing an expert to establish an insanity defense. Crawford's substitute counsel, Pannell, knew that Crawford experienced seizures and might have brain damage. The Timber Hills Mental Health Center evaluation stated that a seizure disorder could explain Crawford's memory deficits on the night of the crime. ROA.2899. Crawford's pretrial jail and medical records documented multiple seizures and blackouts that required hospitalization and various medications, including an anti-seizure medication. ROA.3029-34, 3037-58. Family members and friends described symptoms consistent with brain damage. ROA.1647-50, 1661, 1673-73, 2873, 2918, 2923-32. Kelly Roberts and her friend testified that Crawford's personality and appearance changed abruptly around the time of the offense. ROA.2543-46, 2594, 2599, 2605-06.

Even more to the point, two experts told Pannell that Crawford's seizures and blackouts could be evidence of brain damage. In May 1993, Dr. Hutt wrote an affidavit stating that Crawford's recent seizures "could possibly be caused by organic brain damage resulting from a severe head injury he suffered in his late teens." ROA.3009. Dr. Mark Webb, hired by Crawford's sister, told trial counsel

that Crawford showed signs of organic brain damage. ROA.3161. Both urged counsel to arrange for additional neurological and neuropsychological testing. ROA.1043, 3009, 3161.

Pannell, however, did not do so. And the reason he gave forecloses any reasonable basis to conclude that his performance was not ineffective. He believed that the trial court would "force [him] to use the experts at the Mississippi State Hospital—the very same experts that would testify for the State." ROA.3165. But under *Ake*, Crawford had the right to an expert to assist in the "evaluation, preparation, and presentation of the defense," 470 U.S. at 83, and state doctors who are not working for the defense do not satisfy that right. *McWilliams*, 137 S. Ct. 1793. As the Supreme Court has held, "ignorance of a point of law that is fundamental to [counsel's] case" is a "quintessential example" of deficient performance under *Strickland*. *Hinton*, 571 U.S. at 274; *see also Williams v. Taylor*, 529 U.S. 326, 395 (2000); *Canales v. Stephens*, 765 F.3d 551, 569 (5th Cir. 2014).

Nor is there any other basis for concluding that Pannell acted reasonably in failing to investigate Crawford's seizures and brain damage. At the time of Crawford's trial, it was well established that "a criminal defense attorney has a duty to investigate a client's medical history when it becomes clear that the client is suffering from mental difficulties rendering him insane or incompetent to stand trial." *Miller v. Dretke*, 420 F.3d 356, 364 (5th Cir. 2005) (citing *Bouchillon v.*

*Collins*, 907 F.2d 589 (5th Cir. 1990); *Profitt v. Waldron*, 831 F.2d 1245 (5th Cir. 1987); *Beavers v. Balkom*, 636 F.2 114 (5th Cir. 1981)). And it was clear that expert assistance is "a virtual necessity if an insanity plea is to have any chance of success." *Ake*, 470 U.S. at 81. This was obvious not just from *Ake*, but also from Mississippi Supreme Court decisions underscoring the importance of expert testimony in insanity cases, *see Johnson v. State*, 475 So.2d 1136, 146-47 (Miss. 1985), and from this Court's decisions finding counsel ineffective for failing to consult with appropriate mental health experts as part of their investigation. *See Lockett v. Anderson*, 230 F.3d 695, 713-15 (5th Cir. 2000) (counsel ineffective for failing to investigate and present evidence of organic brain damage, where expert recommended investigation, and failure to investigate prevented "*informed* decision" on whether to present insanity evidence); *Bouchillion*, 907 F.2d at 596-97 (counsel ineffective for failing to investigate insanity defense when counsel knew of client's prior hospitalizations); *Beavers*, 636 F.2d at 116.

The panel erroneously held that counsel made a reasonable strategic choice to forgo expert testimony because expert testimony was not successful in Crawford's aggravated assault trial. *Id.* at 991. But this supposed "choice" does not remedy counsel's failure to investigate Crawford's neurological health. To the contrary, the expert testimony offered in the assault trial was limited precisely because the expert could not perform the tests Pannell was told were necessary. ROA.1043, 3009. If

32

anything, the lack of success when offering this constrained testimony further shows how imperative an investigation was. Moreover, the panel's retroactive justification is absent from Pannell's affidavit, which states that he did not get expert assistance for the rape trial due to the mistaken belief that he would have to use the State's experts. ROA.3165.

### B.    Counsel's deficient performance prejudiced Crawford.

Prejudice is also indisputable. A failure to preserve the *Ake* claim standing alone was prejudicial. Had that claim been preserved and presented to the Mississippi Supreme Court, there is at least a reasonable likelihood that Crawford's conviction would have been vacated. *See* pp. 22-23, 27, *supra*. Moreover, had counsel heeded the advice of Drs. Hutt and Webb by having Crawford undergo neurological and neuropsychological testing, there is, at the very least, a reasonable probability that Pannell would have been able to present the jury with compelling evidence of Crawford's insanity. *See Strickland*, 466 U.S. at 696.

The report and affidavit of Dr. Nadkarni, submitted in the postconviction proceeding, make clear that Crawford had severe brain damage and temporal lobe epilepsy, "compounded by severe abuse and neglect as a child," ROA.2492; *see* pp. 13-14, *supra.* Dr. Nadkarni further found that, at the time of the offense, "Crawford was laboring under such a defect of reason from his seizure disorder that he did not understand the nature and quality of his acts." ROA.2494. And Dr. Nadkarni

33

rebutted the State expert's opinion that Crawford's behavior was due to an antisocial personality.  ROA.2920.

Had counsel conducted a reasonable investigation and developed expert testimony along these lines for trial, he would have been able to provide the jury with compelling evidence of insanity that would have rebutted the State's contention that Crawford simply had a personality disorder and was malingering his memory deficits.  ROA.2920.  Such evidence would have materially changed the evidentiary picture because Crawford's lay witnesses could not offer a medical explanation for Crawford's behavior, or even tell the jury that Crawford was seriously mentally ill.  ROA.1648-49, 1653, 1678-79, 1682, 1687.  Indeed, because Crawford did not have his own expert, the State was able to argue in closing that Crawford's lay witnesses could not raise a doubt about Crawford's sanity.  ROA.1819.  Accordingly, there is a reasonable probability the outcome of Crawford's trial would have been different had counsel investigated and presented evidence of his seizure disorder and brain damage.

The prejudice in this case is particularly clear because once Crawford had raised reasonable doubt as to his sanity (which he could have done with the expert testimony presented in postconviction proceedings), the burden would have shifted to the State to prove his sanity beyond a reasonable doubt.  *See Roundtree v. State*, 568 So. 2d 1173, 1181 (Miss. 1990).  This Court has relied on such burden shifting

to find prejudice when counsel has failed to investigate an insanity defense in similar circumstances. *Profitt*, 831 F.2d at 1249-50. The same conclusion is warranted here.

### III. This Court should not adopt the panel's unprecedented requirement of factual innocence as a prerequisite to habeas relief.

The panel departed from the text of the habeas statute and centuries of habeas law in its unprecedented alternative holding that no habeas petitioner—even one whose conviction or sentence is unconstitutional under clearly established law—is entitled to relief unless he can make a colorable showing of factual innocence. Such a requirement would fundamentally alter the nature and scope of the writ of habeas corpus: both under English law, and as construed in over 150 years of Supreme Court decisions, the writ focuses on the *lawfulness* of a petitioner's detention, not his innocence or guilt. From the very first habeas statutes, concededly guilty petitioners have obtained relief, and the Supreme Court has repeatedly rejected arguments that those statutes impose any innocence requirement. Congress has ratified that consistent interpretation by repeatedly recodifying the habeas statute, including in AEDPA. It is thus clear that courts lack authority to rewrite the federal habeas statute by imposing an atextual, ahistorical innocence requirement that would deny relief even to petitioners—like Mr. Crawford—who can demonstrate that their detention is unlawful.

### A.    An innocence requirement cannot be reconciled with Section 2254's text.

The panel's innocence requirement has no textual basis.  Section 2254(a) sets forth the substantive standard for granting relief to a prisoner in state custody: the court may grant relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *see* 28 U.S.C. § 2241(c)(3).  Congress authorized habeas relief if the prisoner's custody is *unlawful*; the statute does not require proof of innocence.

Section 2254(a)'s silence as to innocence is hardly surprising in light of bedrock constitutional principles—principles that would have led Congress to expect that guilty petitioners *would* be eligible for, and receive, habeas relief in appropriate circumstances.  The constitutional protections attending the criminal process have always been understood to protect the guilty as well as the innocent. *See, e.g., Ex parte Garland*, 71 U.S. 333, 346-47, 367 (1866); *Ex parte Milligan*, 71 U.S. 2, 132 (1866) (Chase, C.J., concurring) ("The laws which protect the liberties of the whole people must not be violated or set aside in order to inflict, even upon the guilty, unauthorized though merited justice."); *Brown v. Walker*, 161 U.S. 591, 627 (1896); *Hill v. Texas*, 316 U.S. 400, 406 (1942)).  In providing that a petitioner may be granted relief if he demonstrates that he is in custody in violation of the Constitution, Congress would certainly have understood based on this long and unbroken historical tradition that guilty petitioners as well as innocent ones would

be able to demonstrate that they were unlawfully in custody. Had Congress intended to restrict habeas relief for prisoners unable to make a showing of innocence, it would have done so explicitly.

The absence of any textual indication that Congress wanted to condition habeas relief on innocence is all the more striking given that Congress *did* impose an innocence requirement in order to overcome the statutory provisions barring review of procedurally defaulted claims. *See* 28 U.S.C. § 2244(b)(2)(B) (barring claims presented for the first time in a successive habeas petition unless the underlying facts "would be sufficient to establish by clear and convincing evidence" that "no reasonable factfinder would have found the applicant guilty"); *id*. § 2254(e)(2)(B). Those provisions incorporate the pre-AEDPA miscarriage-of-justice exception that the Supreme Court recognized when it initially crafted procedural-default rules. *McQuiggin v. Perkins*, 569 U.S. 383, 395-96 (2013). Congress thus knew how to require a showing of innocence—but it chose to do so only where the petitioner has procedurally defaulted his claims and therefore would otherwise forfeit review.

### B.    History and precedent foreclose the panel's reliance on Section 2243's provision that courts shall "dispose of the matter as law and justice require."

Notwithstanding Section 2254(a)'s lack of any textual indication that innocence is a prerequisite to relief, the panel fastened upon Section 2243's

instruction that courts "shall . . . dispose of the matter as law and justice require," 28 U.S.C. § 2243, to justify its innocence requirement.   The panel's expressed understanding of Section 2243 varied throughout its opinion—but no defensible reading of Section 2243 supports imposing an innocence requirement.

In some places, the panel asserted that Section 2243 itself *requires* denial of relief to a petitioner who cannot show his innocence.  Op.19 ("Crawford's innocence claim is not colorable, so law and justice would still require denying his petition."). That view cannot be reconciled with the centuries-long history of habeas corpus. Throughout this country's history, courts have granted habeas relief without regard to innocence, and the Supreme Court repeatedly and definitively rejected arguments that habeas relief requires proof of innocence.  Congress's comprehensive revision of the habeas statute in AEDPA incorporates that definitive construction.

Elsewhere, the panel suggested that Section 2243 delegates to the courts permission to create a new innocence requirement out of whole cloth.  Op.16.  That view, too, founders on history:  requiring a showing of innocence would drastically constrict the scope of the writ, and courts have never understood Section 2243 to transfer from Congress to the courts the unbounded authority to make such sweeping changes.   The courts therefore do not have authority to deny habeas relief to petitioners who have made the precise showing required by the habeas statute—that they are detained unconstitutionally under clearly established law—or to close the

38

courthouse doors to innumerable petitioners who, for centuries, have been able to seek federal habeas review without regard to innocence.

> **1.    The instruction that courts shall "dispose of the matter as law and justice require" does not require, and has never required, courts to deny habeas relief absent a showing of innocence.**

Over 150 years of judicial construction establish that "law and justice" do not "require" denying habeas relief to petitioners who cannot show innocence—and, more broadly, that habeas relief has always been available without regard to innocence.

a.    In 1867, Congress extended the federal courts' habeas jurisdiction to prisoners in state custody and, for the first time, specified that the writ was available upon a showing that the petitioner was restrained in "violation of the constitution." Act of Feb. 5, 1867, ch. 28, § I, 14 Stat. 385 (codified at 28 U.S.C. §§ 2241-2255 (1976)). In 1874, as part of a reenactment of the federal code that was intended to leave unchanged the substance of federal law, Congress enacted Section 2243's predecessor, Rev. Stat. § 761, which provided that courts should dispose of the "party as law and justice require." *See* Rev. Stat. § 761; *Kush v. Rutledge*, 460 U.S. 719, 724 n.6 (1983); 2 Cong. Rec. 1210 (Feb. 2, 1874) (Statement of Rep. Poland).

By that time, the Supreme Court had already established that habeas relief was available without regard to the petitioner's innocence. In *Ex parte Lange*, 85 U.S. 163 (1873), the Court upheld relief because the trial court had sentenced Lange to

two punishments for a single offense, violating the Double Jeopardy Clause. *Id.* at 178. The Court left no doubt that innocence was not a prerequisite to granting relief: the Court accepted that the petitioner was a "criminal" who was properly sentenced to *one* punishment for the offense under a "valid" judgment of conviction. *Id.* at 173-74. When Congress first enacted the "law and justice" provision, then, existing habeas law permitted relief without regard to innocence—and in enacting § 761, Congress did not intend to make any substantive changes to existing law.[4]

After § 761's enactment, the Supreme Court reaffirmed that the provision did not condition relief on innocence. In *In re Medley*, 134 U.S. 160 (1890), the Court held that "law and justice" required granting complete release to a prisoner who was concededly guilty of murder but had been convicted under an ex post facto state

---

[4] The panel asserted that for the "first 500 or so years of the writ's existence" (that is, under English common law), habeas "generally could not be used to challenge a judgment of guilt." Op.16. That is incorrect. As the authority on which the panel relied establishes, by the 17th century, judges used the writ to review both the lawfulness of custody before conviction, and also the legality of convictions and sentences. Paul D. Halliday, *Habeas Corpus: From England To Empire* 116-21 (2010). Critically, in all cases the writ was concerned with the lawfulness of the petitioner's detention, not his innocence or guilt, and no showing of innocence was required. *See, e.g., id.* at 118-20 (describing examples of habeas review of summary convictions that were "contrary to law," including because charges were vague, and use of habeas writ to reduce sentences); Clarke D. Forsythe, *The Historical Origins of Broad Federal Habeas Review Reconsidered*, 70 Notre Dame L. Rev. 1079, 1089, 1099-1100 (1995) (quoting Blackstone's description of the writ as ensuring lawfulness of detention); *cf. Schneckloth v. Bustamonte*, 412 U.S. 218, 257 (1973) (Powell, J., concurring) (stating that "history reveals no exact tie of the writ of habeas corpus to a constitutional claim relating to innocence or guilt.").

statute. *Id.* at 161-62. The Court concluded that even though the petitioner was "nevertheless, guilty, as the record before us shows, of the crime of murder in the first degree," the proper disposition was to order release. *Id*. The Court thus found that release was consistent with "law and justice" despite the petitioner's guilt. *Accord In re Savage*, 134 U.S. 176, 177 (1890).

*Medley* was only one of an unbroken line of Supreme Court decisions reaffirming that innocence was irrelevant to entitlement to habeas relief and specifically to what "law and justice" require. In *Moore v. Dempsey*, 261 U.S. 86 (1923), the Court noted that the petitioners claimed they were innocent, but explained that "we leave [that] on one side as what we have to deal with is not the petitioners' innocence or guilt but solely the question whether their constitutional rights have been preserved." *Id*. at 87-88; *Frank v. Mangum*, 237 U.S. 309, 334-35 (1915) ("the essential question before us . . . is not the guilt or innocence of the prisoner, . . . but whether the state, taking into view the entire course of its procedure, has deprived him of due process of law"). And in *Cunningham v. Neagle*, 135 U.S. 1 (1890), the Court explained that § 761's instruction "'to dispose of the party as law and justice require' . . . of course, means that if he is held in custody in violation of the constitution or a law of the United States, or for an act done or omitted in pursuance of a law of the United States, *he must be discharged*." *Id*. at 41 (emphasis added). The Court thus construed "law and justice" to *require* release upon a judicial

41

conclusion that the petitioner's custody was unlawful without regard to innocence—the very opposite of how the panel read that same statutory language.

Finally, in numerous cases, the Court granted habeas relief without considering innocence. In *Ex parte Wilson*, 114 U.S. 417 (1885), the petitioner was found guilty of counterfeiting, yet the Court—without considering innocence—nonetheless found him "entitled to be discharged" because he had been sentenced "without indictment or presentment by a grand jury."[5] *Id*. at 429; *Ex parte Nielsen*, 131 U.S. 176, 190–91 (1889) ("the writ should have been granted, and the petitioner discharged" because the sentence violated the Double Jeopardy Clause); *see also Johnson v. Zerbst*, 304 U.S. 458, 469 (1938) (if petitioner "did not competently and intelligently waive his right to counsel," he is "entitled to have his petition granted"); *Moore*, 261 U.S. at 92.

b.    In 1948, Congress recodified § 761 and the remainder of the habeas statute without substantive change, *see* 62 Stat. 689, 964-65, thereby ratifying the Supreme Court's conclusion that the statute's "law and justice" language did not

---

[5] The Supreme Court recently described these early decisions as granting habeas relief for "jurisdictional defects." *Brown v. Davenport*, 142 S. Ct. 1510, 1521 (2022). But the Court's conception of "jurisdictional defects" *included* constitutional errors, on the theory that such errors deprived the court of jurisdiction. *Ex parte Nielsen*, 131 U.S. at 185; *see also, e.g., Ex parte Wilson*, 114 U.S. at 429. However these decisions are characterized, the critical point is that they granted relief without considering innocence.

42

require proof of innocence.  *See Georgia v. Public.Resource.Org, Inc.*, 140 S. Ct. 1498, 1510 (2020) (when "Congress 'adopt[s] the language used in [an] earlier act,' we presume that Congress 'adopted also the construction given by this Court to such language, and made it a part of the enactment.'"); *Shapiro v. United States*, 335 U.S. 1, 16 (1948); *Wingo v. Wedding*, 418 U.S. 461, 468-69 (1974) ("The word changes and omissions in Rev. Stat. [§] 761 were intended only as changes in form."). Committee reports related to the bill acknowledged the well-established understanding that a showing of innocence was irrelevant:

> [Habeas corpus] is *not a determination of guilt or innocence* of the charge upon which petitioner was sentenced.  Where a prisoner sustains his right to discharge in habeas corpus, it is usually because some right—such as lack of counsel—has been denied which reflects no determination of his guilt or innocence but affects solely the fairness of his earlier criminal trial.  Even under the broad power in the statute to 'dispose of the party *as law and justice require*,' the court or judge is by no means in the same advantageous position in habeas corpus to do justice as would be so if the matter were determined in the criminal proceeding.

S. Rep. No. 80-1526, at 2 (1948) (emphasis added).  The 1948 recodification therefore reflects Congress's definitive judgment that "law and justice" do not "require" denying habeas relief absent a showing of innocence.

   c.   Between the 1948 recodification and the 1996 enactment of AEDPA, the Supreme Court repeatedly rejected attempts to condition habeas relief on proof of innocence.  *See, e.g., Kaufman v. United States*, 394 U.S. 217 (1969).  Congress's failure to amend Section 2243 or the "law and justice" language as part of its

43

comprehensive revision of habeas corpus procedure in AEDPA therefore confirms that the "law and justice" provision does not require a showing of innocence.  It would have been natural for the Congress that enacted AEDPA—which substantially narrowed the scope of habeas relief based on Congress's policy judgments about the appropriate weight to be given to state interests in comity and finality—to require proof of innocence in all cases had Congress thought such a requirement appropriate.  But Congress did no such thing. *See Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 139 S. Ct. 628, 633-34 (2019).

In *Kaufman*, the Court rejected Justice Black's argument in dissent that the "probable or possible innocence" of a petitioner should be given "weight in determining whether a judgment . . . should be open to collateral attack" in light of Section 2243's reference to "law and justice."  394 U.S. at 233-34 (Black, J., dissenting).  In rejecting that argument, the Court observed that collateral relief protects constitutional rights—including claims for illegal search and seizure, which were at issue in the case—"whether or not they bear on the integrity of the fact-finding process." *Id*. at 229.  The "possibility of innocence" therefore was not relevant. *Id*.

Although the Court subsequently limited the situations in which petitioners may raise Fourth Amendment claims in postconviction proceedings, *Stone v. Powell*, 428 U.S. 465 (1976), the Court simultaneously reaffirmed that innocence is

irrelevant to entitlement to relief. In *Stone*, the Court held that because the exclusionary rule is not a personal constitutional right, prudential considerations justified limiting prisoners' ability to enforce the exclusionary rule in postconviction proceedings. *Id*. at 486, 493-94. The Court observed that excluding illegally seized evidence sometimes results in a "windfall" for "the guilty"—yet the Court nonetheless held that petitioners may bring such claims in federal habeas if they lacked an opportunity to bring the same claim in state court. *Id*. at 492. Even in limiting exclusionary-rule claims in habeas, then, *Stone* took as given that innocence is irrelevant.

Even more to the point, after *Stone*, the Supreme Court repeatedly rejected arguments that the petitioner's apparent guilt should bar relief. In *Rose v. Mitchell*, the Court eschewed Justice Powell's proposal to make habeas available only to "protect the innocent from incarceration," 443 U.S. 545, 587 (1979) (Powell, J., concurring), as well as the State's argument that "habeas corpus relief should be granted only where the error alleged in support of that relief affected the determination of guilt." *Id*. at 560. The Court acknowledged that permitting the grand jury discrimination claims at issue could aid the "guilty in fact," *id*. at 564, but stated that habeas review was "necessary" to correct "constitutional defects" in the grand jury process, *id*. at 563. Similarly, in *Kimmelman v. Morrison*, 477 U.S. 365, 368 (1986), the Court declined to exempt from habeas relief claims for ineffective

45

assistance of counsel based on failure to move to suppress evidence. *Kimmelman* rejected the argument that such claims do not vindicate innocence, "declin[ing] to hold" that the principle that "[t]he constitutional rights of criminal defendants are granted to the innocent and the guilty alike" is "altered simply because the right is asserted on federal habeas review rather than on direct review." *Id*. at 380.

By the time Congress enacted AEDPA, then, the Court had repeatedly rejected arguments, sometimes premised explicitly on Section 2243's "law and justice" provision, that habeas relief should be conditioned on a showing of innocence. Congress is presumed to legislate with knowledge of that well-established interpretation. *See Evans v. United States*, 504 U.S. 255, 259-60 (1992). When Congress comprehensively revised the habeas statute but left Section 2243's "law and justice" provision unchanged, it presumptively intended to adopt the Supreme Court's established construction: "law and justice" do not "require" denying habeas relief absent a showing of innocence. *Accord Lafler v. Cooper*, 566 U.S. 156, 168 (2012) (noting in AEDPA case that respondent established Sixth Amendment violation despite "[t]he fact that respondent is guilty").

## 2.   Section 2243's "law and justice" provision does not grant courts discretion to create an innocence requirement  or to deny individual petitions for failure to show innocence.

The panel alternatively suggested that Section 2243 grants courts "discretion" to deny habeas relief "when the prisoner is factually guilty." Op.16. That assertion

is no more consistent with history and precedent than the panel's more aggressive claim that Section 2243 itself requires proof of innocence. Section 2243's reference to "law and justice" gives the courts discretion to fashion certain interstitial claims-channeling rules. But in the 150 years since the "law and justice" provision was first enacted, the Supreme Court has *not once* suggested that the provision confers on courts (including the Supreme Court itself) the authority to rewrite the habeas statute—and upend the balance Congress struck between protecting constitutional rights and respecting state comity and finality interests—by requiring proof of innocence.

a.      Since the enactment of the Habeas Corpus Act of 1867, the habeas statute has empowered federal courts to grant writs of habeas corpus "in all cases where any person may be restrained of his or her liberty in violation of the constitution, or any treaty or law of the United States." Act of Feb. 5, 1867, ch. 28, § I, 14 Stat. 385; 28 U.S.C. § 2241(c). Although the statute has never *directed* courts to grant relief upon a showing of constitutional error, *see* 28 U.S.C. § 2241, 2254, the Supreme Court has never suggested that courts may deny relief where a petitioner's procedurally proper claims establish that his conviction or sentence violates clearly established law. Quite the contrary: since 1867, the Court has repeatedly held that once a petitioner whose claims are properly presented demonstrates constitutional error, he is "entitled" to relief. *See, e.g., Ex parte*

*Nielsen*, 131 U.S. at 184 (petitioner was "entitled to a [writ of] *habeas corpus*" because state court "ha[d] no constitutional authority or power to condemn" him); *Medley*, 134 U.S. at 173 (upon finding constitutional violation, it is "our duty to order the release of the prisoner"); *Wilson*, 114 U.S. at 429 (same); *Cunningham*, 135 U.S. at 41; *Johnson*, 304 U.S. at 469 (upon constitutional violation, petitioner is "entitled to have his petition granted").

Accordingly, the Supreme Court has historically construed Section 2243's instruction to dispose of habeas petitions "as law and justice require" consistently with a petitioner's "entitle[ment]" to relief upon a showing of unlawful detention. Specifically, the Court has interpreted the provision to confer two limited forms of discretion, neither of which permits courts to deny relief to petitioners with meritorious, properly presented claims of unlawful detention. First, courts may tailor habeas relief to the circumstances of the case, including by awarding relief short of release. *Wilkinson v. Dotson*, 544 U.S. 74, 85 (2005). Second, the Court has held that the "law and justice" provision enables it to "adjust the scope of the writ" based on prudential considerations, including federalism and finality. *Danforth v. Minnesota*, 552 U.S. 264, 278-79 (2008). *All* of the "adjust[ments]" the Court has made have involved claims-channeling and other procedural rules that govern the time and manner for bringing and proving habeas claims. *E.g.*, *McCleskey v. Zant*, 499 U.S. 467 (1991) (historical abuse-of-the-writ doctrines bar

repetitive petitions); *Wainwright v. Sykes*, 433 U.S. 72 (1977) (procedural default arising from failure to raise claims at earliest opportunity); *Brecht v. Abrahamson*, 507 U.S. 619 (1993) (harmless-error standard that governs collateral review); *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (petitions may be barred by adequate, independent state procedural grounds); *Teague v. Lane*, 489 U.S. 288, 305–310 (1989) (generally speaking, law at the time of the conviction should apply to habeas claims). Many of these procedural limitations had longstanding roots in habeas jurisprudence. *See Wainwright*, 433 U.S. 80. Others (such as the *Teague* and *Brecht* rules) elaborated on how courts should determine *whether* a petitioner was "in custody in violation of the Constitution"—that is, what law applies to that determination. All predated AEDPA, and thus could be viewed as implicitly approved by Congress, to the extent AEDPA did not expressly incorporate them.[6]

Although *Stone* differs from those decisions—it limited exclusionary-rule claims in habeas—*Stone* does not suggest that the courts possess unbounded discretion to foreclose constitutional claims regardless of merit. The *Stone* Court emphasized that it was not "concerned with the scope of the habeas corpus statute

---

[6] The only situation in which the Court has suggested that a showing of "actual innocence" is relevant is when a petitioner uses that showing to overcome some of these otherwise-applicable procedural barriers. *Murray v. Carrier*, 477 U.S. 478, 497 (1986); *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986) (Powell, J., plurality opinion).

as authority for litigating constitutional claims generally."  428 U.S. at 494 n.37.

Rather, the Court's decision was based on the fact that the exclusionary rule is not a

"personal constitutional right," *id.* at 486, but instead a "judicially created means of

[protecting] the rights secured by the Fourth Amendment," *id*. at 482, which freed

the Court to adjust the scope of the rule itself by "balancing" costs and benefits, *id*.

at 488.  As discussed above, moreover, the Court did not suggest that innocence was

relevant to habeas relief—and indeed *Stone* contemplates that likely guilty

petitioners may raise exclusionary-rule claims in federal court if they have not had

the opportunity to do so in prior state proceedings. *See* pp. 44-45, *supra*.  Later

decisions have confirmed the narrowness of *Stone*'s holding—and explained that the

Court would not have comparable discretion to limit habeas relief with respect to

other constitutional claims that lack the unique features of the exclusionary rule.

*Kimmelman*, 477 U.S. at 379.

b.     Thus, the Supreme Court has *never* suggested that the "law and justice"

provision gives courts the authority to deny relief to habeas petitioners without

regard to whether they can demonstrate through properly presented claims that they

are "in custody in violation of the Constitution."  28 U.S.C. § 2241.  More

specifically, the Supreme Court has never suggested that courts would have authority

to impose an innocence requirement.  To the contrary, the "lack of historical

precedent" for a claimed authority, "coupled with the breadth of [that] authority," is

strong evidence that the authority does not exist. *NFIB v. OSHA*, 142 S. Ct. 661, 666 (2022) (quoting *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 505 (2010)) (construing scope of statutory grant of authority). Here, 150 years of unbroken precedent leaves no doubt. The Supreme Court's failure even to hint, over that entire time, that the habeas statute grants authority to require innocence, "is a 'telling indication'" that imposing an innocence requirement, or denying an individual petition for failure to show innocence, would extend beyond the courts' "legitimate reach." *Id*.; *United States v. Texas*, 143 S. Ct. 1964, 1970 (2023). Given that the Supreme Court has never thought it had the authority to impose an innocence requirement under Section 2243, it is difficult to see how a court of appeals could do so in the first instance.

Moreover, the authority claimed by the panel could hardly be more sweeping. *NFIB*, 142 S. Ct. at 666. An innocence requirement would upend the traditional nature and scope of federal habeas corpus. For centuries, federal courts have granted habeas relief to petitioners whose procedurally proper claims demonstrate that they are unconstitutionally held, without regard to innocence. *See* pp. 39-46, *supra*. Imposing an innocence requirement would cast aside that entrenched historical understanding and slam shut the courthouse doors to innumerable petitioners who have always enjoyed access to federal-court review of properly presented claims.

c.     Even if Section 2243 theoretically conferred on courts discretion to impose an innocence requirement, this Court should not take that dramatic and draconian step.  The Supreme Court has repeatedly held in the context of similar statutory provisions that "discretion is not whim," and must always be guided by "sound legal principles."  *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 579 U.S. 93, 103 (2016) (citing cases).  For all the reasons stated above, requiring innocence would fundamentally alter the nature and availability of the writ and break from over a century of shared judicial and congressional understanding.   Fundamental separation-of-powers principles dictate that whether to take such a momentous step is for Congress, and not the judiciary, to decide.

That conclusion is reinforced by the fact that the finality and federalism justifications given by the panel do not justify an innocence requirement.  To be sure, an innocence requirement might be said to further those interests, through the blunt mechanism of truncating the scope of federal habeas.  But the Court may not weigh finality and federalism concerns in a manner that conflicts with the principles animating the habeas statute.  Congress's foundational premise in enacting the statute, reflected in its provision that a state prisoner may be released upon showing that his conviction or sentence was unconstitutionally imposed, is that finality and federalism concerns must give way in the face of properly presented constitutional error.  *See Hill*, 316 U.S. at 406 (state, like federal government, has a "duty" to

ensure constitutional process); *Herrera v. Collins*, 506 U.S. 390, 421 (1993) (emphasizing finality interests that arise from a proceeding that has been adjudicated "constitutionally adequate"). That is no doubt why the Supreme Court has over time created *procedural* guardrails that protect finality (by limiting petitioners' ability to file multiple petitions, revive old claims, and assert defaulted claims), and that protect federalism by requiring petitioners to abide by state procedural rules (*see* pp. 48-49, *supra*). But the Court has never suggested that finality or federalism could justify denying relief to state prisoners who properly presented and proved that their conviction or sentence violated the Constitution but could not show innocence.

> ### C.   Recent Supreme Court cases do not support the panel's actual-innocence requirement.

Finally, the panel relied on passing statements in *Brown v. Davenport* and *Shinn v. Ramirez* to justify its innocence requirement. But those decisions do not support the kind of radical change the panel adopted.

In *Brown v. Davenport*, 142 S. Ct. 1510 (2022), the Supreme Court held that a habeas corpus petitioner must satisfy both 28 U.S.C. § 2254(d) and the *Brecht* harmless error test to obtain relief. In dicta, the Court stated that Section 2243 gave courts authority to adjust the scope of the writ in light of equitable concerns, and that the foremost concern was the States' "powerful and legitimate interest in punishing the guilty." *Id*. at 1523. That oblique reference does not implicitly reverse 150 years of Supreme Court decisions holding that innocence is irrelevant to relief. And in

any event, the decisions that *Brown* quoted for that proposition were discussing the States' interest in finality—that is, their interest in punishing those adjudged guilty after "lengthy federal [habeas] proceedings *have run their course*." *Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (emphasis added).   Justice O'Connor's concurrence in *Herrera v. Collins*, quoted by *Calderon*, is even clearer on this point. 506 U.S. at 420 (O'Connor, J., concurring).   There, Justice O'Connor explained that a petitioner who claimed actual innocence was "legally guilty" despite that claim, because he had been validly tried and convicted without constitutional error.   *Id*. Justice O'Connor thus emphasized the States' interest in punishing those whose convictions have *withstood* a constitutional challenge in federal habeas proceedings.

The panel also cited statements in both *Davenport* and *Shinn* to the effect that a petitioner must "persuade a federal habeas court that law and justice require" granting relief.   *Shinn v. Ramirez*, 142 S. Ct. 1718, 1731 (2022) (quoting *Davenport*, 142 S. Ct. at 1524); Op.14.   That statement is even further afield.   In both decisions, the Court was making the point that habeas petitioners must comply with both AEDPA's procedural requirements and the longstanding procedural doctrines (such as *Brecht* and procedural default) that the Court has traditionally exercised discretion to craft.   *See* pp. 48-49, 53, *supra*; *Shinn*, 142 S. Ct. at 1732 (discussing procedural default); *Davenport*, 142 S. Ct. at 1524 (*Brecht*).   That discretion does not extend to

wholesale revision of the basic premises of the habeas remedy, for the reasons stated above—and the Court did not suggest otherwise.

## CONCLUSION

The district court's denial of Crawford's § 2254 petition for habeas corpus relief should be reversed.

Date: July 31, 2023                    Respectfully submitted,

                                       /s/ Donald B. Verrilli, Jr.

Vanessa J. Carroll                     Donald B. Verrilli, Jr.
Patrick Mulvaney                       Ginger D. Anders
Southern Center for Human Rights       MUNGER, TOLLES & OLSON LLP
60 Walton Street NW                    601 Massachusetts Ave., NW
Atlanta, GA 30303                      Suite 500E
P: (404) 688-1202                      Washington, DC 20001
F: (404) 688-9440                      P: (202) 220-1100
vcarroll@schr.org                      F: (202) 220-2300
                                       Donald.Verrilli@mto.com

*Counsel for Petitioner-Appellant*

**CERTIFICATE OF SERVICE**

I certify that on July 31, 2023, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

Date: July 31, 2023

/s/ *Donald B. Verrilli, Jr.*

Donald B. Verrilli, Jr.
Munger, Tolles & Olson LLP
601 Massachusetts Ave., NW
Suite 500E
Washington, DC 20001
P: (202) 220-1100
F: (202) 220-2300
Donald.Verrilli@mto.com
*Counsel for Petitioner-Appellant*

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 12,972 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point, Times New Roman.

Date: July 31, 2023

*/s/ Donald B. Verrilli, Jr.*
Donald B. Verrilli, Jr.
Munger, Tolles & Olson LLP
601 Massachusetts Ave., NW
Suite 500E
Washington, DC 20001
P: (202) 220-1100
F: (202) 220-2300
Donald.Verrilli@mto.com
*Counsel for Petitioner-Appellant*

**ADDENDUM**

# TABLE OF CONTENTS

28 U.S.C. § 2241 ................................................................ 1a

28 U.S.C. § 2243 ................................................................ 2a

28 U.S.C. § 2244(b)(2)....................................................... 3a

28 U.S.C. § 2254(a), (d), (e) ............................................. 4a

Act of Feb. 5, 1867, ch. 28, § I, 14 Stat. 385 ......................... 6a

Rev. Stat. § 761 ................................................................ 7a

i

## 28 U.S.C. § 2241
## Power to grant writ

**(a)** Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.

**(b)** The Supreme Court, any justice thereof, and any circuit judge may decline to entertain an application for a writ of habeas corpus and may transfer the application for hearing and determination to the district court having jurisdiction to entertain it.

**(c)** The writ of habeas corpus shall not extend to a prisoner unless--

**(1)** He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or

**(2)** He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or

**(3)** He is in custody in violation of the Constitution or laws or treaties of the United States; or

**(4)** He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or

**(5)** It is necessary to bring him into court to testify or for trial.

**(d)** Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in

custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application. The district court for the district wherein such an application is filed in the exercise of its discretion and in furtherance of justice may transfer the application to the other district court for hearing and determination.

**(e)(1)** No court, justice, or judge shall have jurisdiction to hear or consider an application for a writ of habeas corpus filed by or on behalf of an alien detained by the United States who has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.

**(2)** Except as provided in paragraphs (2) and (3) of section 1005(e) of the Detainee Treatment Act of 2005 (10 U.S.C. 801 note), no court, justice, or judge shall have jurisdiction to hear or consider any other action against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.

### 28 U.S.C. § 2243
### Issuance of writ; return; hearing; decision

A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

The writ, or order to show cause shall be directed to the person having custody of the person detained. It shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed.

The person to whom the writ or order is directed shall make a return certifying the true cause of the detention.

When the writ or order is returned a day shall be set for hearing, not more than five days after the return unless for good cause additional time is allowed.

Unless the application for the writ and the return present only issues of law the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained.

The applicant or the person detained may, under oath, deny any of the facts set forth in the return or allege any other material facts.

The return and all suggestions made against it may be amended, by leave of court, before or after being filed.

The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require.

## 28 U.S.C. § 2244
## Finality of determination

\* \* \*

**(b)**

\* \* \*

**(2)** A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless--

**(A)** the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

**(B)(i)** the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

**(ii)** the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

**\* \* \***

## 28 U.S.C. § 2254
## State custody; remedies in Federal courts

**(a)** The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

**\* \* \***

**(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

**(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

**(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

**(e)(1)** In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be

presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

**(2)** If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

**(A)** the claim relies on--

**(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

**(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and

**(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

\* \* \*

CHAP. XXVII. — *An Act amendatory of " An Act to amend an Act entitled ' An Act relating to Habeas Corpus, and regulating judicial Proceedings in certain Cases,'" approved May eleventh, eighteen hundred and sixty-six.*

Feb. 5, 1867.

1866, ch. 80.
*Ante*, p. 46.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That whenever in any suit or prosecution which has been or may be commenced in any State court, and which the defendant is authorized to have removed from said court to the circuit court of the United States, under and by virtue of the provisions of " An act relating to habeas corpus, and regulating judicial proceedings in certain cases," approved March third, eighteen hundred and sixty-three, or by virtue of an act amendatory thereof, approved May eleventh, eighteen hundred and sixty-six, and all the acts necessary for the removal of said cause to the circuit court shall have been performed, and the defendant in any suit shall be in actual custody on process issued by said State court, it shall be the duty of the clerk of the said circuit court of the United States to issue a writ of habeas corpus cum causa; and it shall be the duty of the marshal, by virtue of the said writ of habeas corpus, to take the body of the defendant into his custody to be dealt with in said circuit court according to rules of law, and the orders of the said court, or of any judge thereof in vacation; and he shall file a duplicate copy of said writ of habeas corpus with the clerk of the State court in which said suit was commenced, or deliver said duplicate to the clerk of said court; and all attachments made, and all bail and other security given in any suit or prosecution which has been or shall be removed from any State court to the circuit court of the United States, in pursuance of law, shall be and continue in like force and effect as if the same suit had proceeded to final judgment and execution in the State court.

When in any suit begun in a State court and removed to the circuit court of the United States, the defendant is in actual custody under the State process, the defendant in any suit shall issue a habeas corpus cum causa.

1863, ch. 81.
Vol. xii. p. 755.
Proceedings thereon.
The marshal to take the body; to file duplicate copy with the clerk of the State court.

Attachments, bail, &c. to continue in full force.

Approved, February 5, 1867.

to the court to which it should have been sent had the clerk known the residence of the defendant when the action was brought.

SEC. 746. When the trial or hearing of any cause, civil or criminal, in a circuit or district court, has been commenced and is in progress before a jury or the court, it shall not be stayed or discontinued by the arrival of the time fixed by law for another session of said court; and the court may proceed therein and bring it to a conclusion, in the same manner and with the same effect as if another stated term of the court had not intervened.

<div style="float:right">Causes in pro-<br>gress of trial not<br>discontinued by ar-<br>rival of new term.<br><br>2 March, 1855, c.<br>140, s. 1, v. 10, p. 620.</div>

SEC. 747. In all the courts of the United States the parties may plead and manage their own causes personally, or by the assistance of such counsel or attorneys at law as, by the rules of the said courts, respectively, are permitted to manage and conduct causes therein.

<div style="float:right">Parties may man-<br>age their causes<br>personally or by<br>counsel.<br><br>24 Sept., 1789, c.<br>20, s. 35, v. 1, p. 92.</div>

SEC. 748. No clerk, assistant or deputy clerk, of any territorial, district, or circuit court, or of the Court of Claims, or the Supreme Court of the United States, or marshal or deputy marshal of the United States within the district for which he is appointed, shall act as a solicitor, proctor, attorney, or counsel in any cause depending in either of said courts, or in any district for which he is acting as such officer.

<div style="float:right">Certain officers<br>forbidden to prac-<br>tice as attorneys,<br>&c.<br><br>16 Jan., 1873, c.<br>36, s. 1, v. 17, p. 411.</div>

SEC. 749. Whosoever violates the preceding section shall be stricken from the roll of attorneys by the court upon complaint, upon which the respondent shall have due notice, and be heard in his defense; and in the case of a marshal or deputy marshal so acting, he shall be recommended by the court for dismissal from office.

<div style="float:right">Penalty for vio-<br>lating preceding<br>section.<br><br>16 Jan., 1873, c.<br>36, s. 2, v. 17, p. 411.</div>

SEC. 750. In equity and admiralty causes, only the process, pleadings, and decree, and such orders and memorandums as may be necessary to show the jurisdiction of the court and regularity of the proceedings, shall be entered upon the final record. [See § 698.]

<div style="float:right">Final record, how<br>made in equity and<br>admiralty causes.<br><br>26 Feb., 1853, c.<br>80, s. 1, v. 10, p. 163.</div>

# CHAPTER THIRTEEN.

## HABEAS CORPUS.

Sec.
751. Power of courts to issue writs of habeas corpus.
752. Power of judges to grant writs of habeas corpus.
753. Writs of habeas corpus when prisoner is in jail.
754. Application for the writ of habeas corpus.
755. Allowance and direction of the writ.
756. Time of return.
757. Form of return.
758. Body of the party to be produced.
759. Day for hearing.

Sec.
760. Denial of return, counter-allegations, amendments.
761. Summary hearing; disposition of party.
762. In cases involving the law of nations, notice to be served on State attorney-general.
763. Appeals in cases of habeas corpus to circuit court.
764. Appeal to Supreme Court.
765. Appeals, how taken.
766. Pending proceedings in certain cases, action by State authority void.

SEC. 751. The Supreme Court and the circuit and district courts shall have power to issue writs of habeas corpus.

<div style="float:right">Power of courts<br>to issue writs of<br>habeas corpus.</div>

24 Sept., 1789, c. 20, s. 14, v. 1, p. 81.  10 April, 1869, c. 22, s. 2, v. 16, p. 44.  2 March, 1833, c. 57, s. 7, v. 4, p. 634.  5 Feb., 1867, c. 28, s. 1, v. 14, p. 385.  29 Aug., 1842, c. 257, s. 1, v. 5, p. 539.—U. S. vs. Hamilton, 3 Dall., 17; Ex parte Burford, 3 Cr., 448; Ex parte Bollman, 4 Cr., 75; Ex parte Wilson, 6 Cr., 52; Ex parte Kearney, 7 Wh., 38; Ex parte Watkins, 3 Pet., 193; Ex parte Watkins, 7 Pet., 568; Ex parte Milburn, 9 Pet., 704; Holmes vs. Jennison, 14 Pet., 540; Ex parte Barry, 2 How., 65; Ex parte Dorr, 3 How., 103; Barry vs. Mercein, 5 How., 103; In re Metzger, 5 How., 176; In re Kaine, 14 How., 103; Ex parte Wells, 18 How., 307; Ex parte Milligan, 4 Wall., 2; Ex parte McCardle, 6 Wall., 318; Ex parte McCardle, 7 Wall., 506; Ex parte Yerger, 8 Wall., 85; Ex parte Lange, 18 Wall., 163; In re Heinrich, 5 Blatchf., 414; Ex parte Keeler, Hemps., 306; U. S. vs. Williamson, 3 Am. Law Rep., 729; Bennet vs. Bennet, 1 Deady, 299; Ex parte Evarts, 7 Am. Law Rep., 79; Norris vs. Newton, 5 McLean, 22; U. S. vs. Rector, 5 McLean, 174; Veremaitre's Case, 13 Law Rep., 608; Ex parte Sifford, 5 Am. Law R., 659; Ex parte Mc-

Can, 14 Am. Law Rep., 158; U. S. *vs.* French, 1 Gallis., 1; *Ex parte* Cheeney, 5 Law Rep., 19; *Ex parte* Des Roches, 1 McAllis., 68; *Ex parte* Pleasants, 4 Cr. C. C., 314; *Ex parte* Turner, 6 Int. Rev. Rec., 147; *Ex parte* Jenkins, 2 Wall., jr., 521; *Ex parte* Robinson, 6 McLean, 355; *Ex parte* Smith, 3 McLean, 121; Meade's Case, 1 Brock., 324; U. S. *vs.* Anderson, Cooke, 143.

| | |
|---|---|
| Power of judges to grant writs of *habeas corpus.* | **SEC. 752.** The several justices and judges of the said courts, within their respective jurisdictions, shall have power to grant writs of habeas corpus for the purpose of an inquiry into the cause of restraint of liberty. |
| 24 Sept., 1789, c. 20, s. 14, v. 1, p. 81.   10 April, 1869, c. 22, s. 2, v. 16, p. 44.   2 March, 1833, c. 57, s. 7, v. 4, p. 634.   5 Feb., 1867, c. 28, s. 1, v. 14, p. 385.   29 Aug., 1842, c. 257, s. 1, v. 5, p. 539. | |
| Writ of *habeas corpus* when prisoner is in jail. | **SEC. 753.** The writ of habeas corpus shall in no case extend to a prisoner in jail, unless where he is in custody under or by color of the authority of the United States, or is committed for trial before some court thereof; or is in custody for an act done or omitted in pursuance of a law of the United States, or of an order, process, or decree of a court or judge thereof; or is in custody in violation of the Constitution or of a law or treaty of the United States; or, being a subject or citizen of a foreign state, and domiciled therein, is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, or order, or sanction of any foreign state, or under color thereof, the validity and effect whereof depend upon the law of nations; or unless it is necessary to bring the prisoner into court to testify. |
| 24 Sept., 1789, c. 20, s. 14, v. 1, p. 81.   2 March, 1833, c. 57, s. 7, v. 4, p. 634.   5 Feb., 1867, c. 28, s. 1, v. 14, p. 385.   29 Aug., 1842, c. 257, s. 1, v. 5, p. 539. | |
| *Ex parte* Dorr, 3 How., 103; *Ex parte* Barnes, 1 Sprague, 133. | |
| Application for the writ of *habeas corpus.* | **SEC. 754.** Application for a writ of habeas corpus shall be made to the court, or justice, or judge authorized to issue the same, by complaint in writing, signed by the person for whose relief it is intended, setting forth the facts concerning the detention of the party restrained, in whose custody he is detained, and by virtue of what claim or authority, if known. The facts set forth in the complaint shall be verified by the oath of the person making the application. |
| 5 Feb., 1867, c. 28, s. 1, v. 14, p. 385. | |
| Allowance and direction of the writ. | **SEC. 755.** The court, or justice, or judge to whom such application is made shall forthwith award a writ of habeas corpus, unless it appears from the petition itself that the party is not entitled thereto. The writ shall be directed to the person in whose custody the party is detained. |
| 5 Feb., 1867, c. 28, s. 1, v. 14, p. 385. | |
| *Ex parte* Watkins, 3 Pet., 193; *Ex parte* Milligan, 4 Wall., 2, (110.) | |
| Time of return. | **SEC. 756.** Any person to whom such writ is directed shall make due return thereof within three days thereafter, unless the party be detained beyond the distance of twenty miles; and if beyond that distance and not beyond a distance of a hundred miles, within ten days; and if beyond the distance of a hundred miles, within twenty days. |
| 5 Feb., 1867, c. 28, s. 1, v. 14, p. 385. | |
| Form of return. | **SEC. 757.** The person to whom the writ is directed shall certify to the court, or justice, or judge before whom it is returnable the true cause of the detention of such party. |
| 5 Feb., 1867, c. 28, s. 1, v. 14, p. 385. | |
| Body of the party to be produced. | **SEC. 758.** The person making the return shall at the same time bring the body of the party before the judge who granted the writ. |
| 5 Feb., 1867, c. 28, s. 1, v. 14, p. 385. | |
| Day for hearing. | **SEC. 759.** When the writ is returned, a day shall be set for the hearing of the cause, not exceeding five days thereafter, unless the party petitioning requests a longer time. |
| 5 Feb., 1867, c. 28, s. 1, v. 14, p. 385. | |
| Denial of return, counter-allegations, amendments. | **SEC. 760.** The petitioner or the party imprisoned or restrained may deny any of the facts set forth in the return, or may allege any other facts that may be material in the case. Said denials or allegations shall be under oath. The return and all suggestions made against it may be amended, by leave of the court, or justice, or judge, before or after the same are filed, so that thereby the material facts may be ascertained. |
| 5 Feb., 1867, c. 28, s. 1, v. 14, p. 385. | |
| Summary hearing; disposition of party. | **SEC. 761.** The court, or justice, or judge shall proceed in a summary way to determine the facts of the case, by hearing the testimony and arguments, and thereupon to dispose of the party as law and justice require. |
| 5 Feb., 1867, c. 28, s. 1, v. 14, p. 385. | |

SEC. 762. When a writ of habeas corpus is issued in the case of any prisoner who, being a subject or citizen of a foreign state and domiciled therein, is committed, or confined, or in custody, by or under the authority or law of any one of the United States, or process founded thereon, on account of any act done or omitted under any alleged right, title, authority, privilege, protection, or exemption, claimed under the commission or order or sanction of any foreign state, or under color thereof, the validity and effect whereof depend upon the law of nations, notice of the said proceeding, to be prescribed by the court, or justice, or judge at the time of granting said writ, shall be served on the attorney-general or other officer prosecuting the pleas of said state, and due proof of such service shall be made to the court, or justice, or judge before the hearing.

*In cases involving the law of nations, notice to be served on State attorney-general.*

29 Aug., 1842, c. 257, v. 5, p. 539.

SEC. 763. From the final decision of any court, justice, or judge inferior to the circuit court, upon an application for a writ of habeas corpus or upon such writ when issued, an appeal may be taken to the circuit court for the district in which the cause is heard :

1. In the case of any person alleged to be restrained of his liberty in violation of the Constitution, or of any law or treaty of the United States.

2. In the case of any prisoner who, being a subject or citizen of a foreign state, and domiciled therein, is committed or confined, or in custody by or under the authority or law of the United States, or of any State, or process founded thereon, for or on account of any act done or omitted under any alleged right, title, authority, privilege, protection, or exemption, set up or claimed under the commission, order, or sanction of any foreign state or sovereignty, the validity and effect whereof depend upon the law of nations, or under color thereof.

*Appeals in cases of habeas corpus to circuit court.*

29 Aug., 1842, c. 257, v. 5, p. 539. 5 Feb., 1867, c. 28, s. 1, v. 14, p. 385. 27 March, 1868, c. 34, s. 2, v. 15, p. 44.

*Ex parte* McCardle, 6 Wall., 318; *Ex parte* McCardle, 7 Wall., 506; *Ex parte* Yerger, 8 Wall., 85.

SEC. 764. From the final decision of such circuit court an appeal may be taken to the Supreme Court in the cases described in the last clause of the preceding section.

*Appeal to Supreme Court.*

29 Aug., 1842, c. 257, v. 5, p. 539.

SEC. 765. The appeals allowed by the two preceding sections shall be taken on such terms, and under such regulations and orders, as well for the custody and appearance of the person alleged to be in prison or confined or restrained of his liberty, as for sending up to the appellate tribunal a transcript of the petition, writ of habeas corpus, return thereto, and other proceedings, as may be prescribed by the Supreme Court, or, in default thereof, by the court or judge hearing the cause.

*Appeals, how taken.*

29 Aug., 1842, c. 257, v. 5, p. 539. 5 Feb., 1867, c. 28, s. 1, v. 14, p. 385.

SEC. 766. Pending the proceedings or appeal in the cases mentioned in the three preceding sections, and until final judgment therein, and after final judgment of discharge, any proceeding against the person so imprisoned or confined or restrained of his liberty, in any State court, or by or under the authority of any State, for any matter so heard and determined, or in process of being heard and determined, under such writ of habeas corpus, shall be deemed null and void.

*Pending proceedings in certain cases, action by State authority void.*

29 Aug., 1842, c. 257, v. 5, p. 539. 5 Feb., 1867, c. 28, s. 1, v. 14, p. 385.

---

# CHAPTER FOURTEEN.

## DISTRICT ATTORNEYS, MARSHALS, AND CLERKS.

Sec.
767. District attorneys.
768. Iowa, district attorney.
769. Term and oath of district attorneys.
770. Salaries of district attorneys.
771. Duties of district attorneys.
772. Statement of suits for fines, penalties, and forfeitures.
773. Returns of district attorneys to Solicitor of the Treasury.
774. Returns of district attorneys to Commissioner of Internal Revenue.

Sec.
775. Reports by district attorney to Department of Justice.
776. Marshals.
777. Georgia, (N. D.,) marshal's office in.
778. Iowa, marshal.
779. Marshal's term.
780. Deputy marshals.
781. Marshal's salaries for extra services.
782. Oath of marshals and deputy marshals.
783. Marshal's bond.